**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

JOHN DOE                                                                    **PLAINTIFF**

**V.**                                                    **CIVIL ACTION NO. 3:18-CV-63-DPJ-FKB**

THE UNIVERSITY OF MISSISSIPPI; STATE
INSTITUTIONS OF HIGHER LEARNING ("IHL");
TRACY MURRY, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY; HONEY USSERY,
INDIVIDUALLY AND IN HER OFFICIAL CAPACITY;
STATE OF MISSISSIPPI, and DOES 1-5.                          **DEFENDANTS**

**DEFENDANTS' BRIEF IN SUPPORT
OF THEIR MOTION TO DISMISS**

Plaintiff John Doe alleges that the University infringed his constitutional and statutory

rights when expelling him for violating the University's sexual misconduct policy. Doe's

allegations fail to establish jurisdiction and fail to state a claim. The Court should dismiss is

Complaint in its entirety.[1]

*1.      Factual background[2]*

Doe and Jane Roe were both undergraduate students at the University during the Spring

2017 academic semester. On March 30, 2017, Doe and Roe had sexual intercourse in Doe's

dorm room. The next day, Roe told Defendant Honey Ussery, the University's Title IX

Coordinator, and representatives of the University Police Department that Doe had sexually

assaulted her. In late May 2017, Roe contacted Defendant Ussery again and informed her that

she wanted to pursue a complaint against Doe for violating the University's policy prohibiting

sexual misconduct.[3]

---

[1] For the Court's convenience, Defendants have attached a matrix outlining Plaintiff's claims and their threshold
deficiencies as Appendix "A" to this Brief.
[2] For purposes of this Motion, Defendants accept Doe's well-pleaded allegations.
[3] Compl., at 8-10 [Doc. 1].

The University's sexual misconduct policy disallows "[s]exual intercourse, or sexual penetration, however slight, with any object or body part without effective consent."[4] The policy provides:

> Sexual intimacy requires that all participants consent to the activity. Consent between two or more people is defined as an affirmative agreement – through clear actions or words – to engage in sexual activity. The person giving the consent must act freely, voluntarily, and with an understanding of his or her actions when giving the consent.
>
> Lack of protest or resistance does not constitute consent, nor does silence mean consent has been given. Relying solely on non-verbal communication can lead to misunderstanding. Persons who want to engage in sexual activity are responsible for obtaining consent – it should never be assumed.
>
> A prior relationship or prior sexual activity is not sufficient to demonstrate consent.
>
> Consent must be present throughout the sexual activity – at any time, a participant can communicate that he or she no longer consents to continuing the activity. If there is confusion as to whether anyone has consented or continues to consent to sexual activity, it is essential that the participants stop the activity until the confusion can be clearly resolved.[5]

Defendant Ussery interviewed Doe, Roe, and nine other witnesses.[6] Roe told Ussery that she did not consent to having sexual intercourse with Roe on March 30, 2017, and that she told Doe several times that she did not want to have sex.[7] Three other witnesses told Ussery that Roe told them she had not consented to sex immediately after the sexual encounter with Doe.[8] Doe told Ussery that Roe did not tell him to stop during the sexual encounter.[9]

Ussery prepared a report summarizing Roe's allegations and the statements of all witnesses (including Doe), and forwarded the report to Defendant Tracy Murry, the Director of

---

[4] Ex. "A" (Sexual Misconduct Policy). Plaintiff references this policy on page 22 of his Complaint.
[5] *Id.*
[6] Ex. "B" (Ussery Report). Plaintiff references this report on pages 12-13 of his Complaint.
[7] *Id.*
[8] *Id.*
[9] *Id.*

the University's Office of Conflict Resolution and Student Conduct, who provided Doe with written notice of the charges and scheduled a disciplinary hearing before the University Judicial Council pursuant to the University's written policies.[10]

A hearing was held on August 24, 2017. Doe was allowed to address the Judicial Council, call witnesses, have legal advisors present, and submit written questions to be asked of witnesses.[11] The Judicial Council found Doe responsible for violating the Sexual Misconduct Policy and expelled him from the University.[12] Doe appealed this decision, and the Appellate Consideration Board remanded the proceedings for a new hearing because of potential confusion caused by Ussery's summary of the case and by conflicting testimony of Doe and Roe.[13]

At the second hearing, Doe testified on his own behalf[14] and posed objections during the hearing.[15] He challenged statements that had been collected by the Title IX coordinator.[16] He provided the Judicial Council with supplemental evidence prior to the hearing, including a forensic report and a polygraph report.[17] He had legal advisors present during the hearing and conferred with them as needed.[18] He called witnesses, including two expert witnesses, and asked

---

[10] Compl., at 12-14 [Doc. 1].

[11] *See* Ex. "C" (August Disciplinary Hearing Transcript). Defendants have included transcripts of both hearings as part of their Motion, the events of those hearings are central to Doe's claims and discussed in great detail in his Complaint. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (holding that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim").
*Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000).*

[12] *See* Ex. "D" (Judicial Council Memo, Aug. 25, 2017). Doe refers to the outcome of the first hearing on page 14 of the Complaint.

[13] *See* Ex. "E" (Appellate Consideration Board Memo, Oct. 11, 2017). Doe refers to this document on page 15 of the Complaint.

[14] Ex. "F" (November Disciplinary Hearing Transcript), at 18:25-31:24.

[15] *Id*. at 17:15-18:21.

[16] *Id*. at 26:14-27:8; 36:25-37:4; 78:14-21; 133:7-23; 137:8-138:1.

[17] *Id*. at 137:17-19; Compl., at 71-74 [Doc. 1].

[18] *Id*. at 2:12-15; Compl., at 75 [Doc. 1].

questions of witnesses through written questions submitted to the Judicial Council.[19] He was

cross-examined the complainant through written questions submitted to the Judicial Council.[20]

Jane Roe testified at the second hearing that she told Doe repeatedly that she did not want

to have sex with him, but that he proceeded to have sex with her.[21] Doe testified that he did not

hear Jane Roe say she did not want to have sex, but he acknowledged that the parties were

initially "unsure" whether they wanted to have sex, that Doe and Roe "never came to the

conclusion that [they] didn't want to have sex," that they "came to the conclusion that [they]

didn't say [they] didn't want to" have sex, and that he did not receive a verbal, "direct yes" from

Roe.[22] The Judicial Council found Doe responsible for a violation of the Sexual Misconduct

policy and suspended him from the University.[23] Both Doe and Roe appealed. After reviewing

the record, the Appellate Consideration Board upheld the finding of responsibility, but increased

Doe's punishment to expulsion.[24]

### 2.   *Standards of law*

A Rule 12(b)(1) motion challenges the plaintiff's invocation of federal subject matter

jurisdiction and questions the very power of the court to hear the case.[25] When one party

challenges subject matter jurisdiction, the party asserting jurisdiction bears the burden of

establishing jurisdiction.[26] When considering a motion to dismiss for lack of subject matter

---

[19] *Id*. at 13:22-17:14, 80:6-114:10; Compl., at 17-18 [Doc. 1].

[20] *Id*. at 32:1-65:25; Compl., at 26 [Doc. 1].

[21] *Id*. at 8:14-9:10, 34:23-35:21; 46:6-47:4.

[22] *Id*. at 24:8-15, 70:9-11, 71:20-25, 130:16-131:2, 134:21-24.

[23] *See* Ex. "G" (Judicial Council Memo, Nov. 17, 2017). Doe refers to this document on page 21 of the Complaint.

[24] *See* Ex. "H" (Appellate Consideration Board Memo, Dec. 5, 2017). Doe refers to this document on page 22 of the Complaint.

[25] *See Krim v. PCOrder.com, Inc*., 402 F.3d 489, 494 (5th Cir. 2005).

[26] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 189 (5th Cir. 2011).

jurisdiction, a court may consider (ii) the complaint alone, (ii) the complaint supplemented by undisputed facts in the record, or (iii) the complaint supplemented by undisputed fact plus the court's resolution of disputed facts.[27]

A ruling under Rule 12(b)(6) should only be rendered after the district court has addressed any arguments regarding subject matter jurisdiction. Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal for failure to state a claim upon which relief may be granted.[28]

> To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level. In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff.  We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[29]

 "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n] – that the pleader is entitled to relief.'"[30]

3.   ***The Eleventh Amendment bars Doe's § 1983 claims and breach of contract claims against the University, IHL, and the State of Mississippi.***

The Eleventh Amendment bars actions brought against a state in federal court by its own citizens or citizens of another state, absent consent, waiver, or abrogation of the state's sovereign immunity.[31] Eleventh Amendment immunity has a jurisdictional effect—it deprives a federal court of the very power to hear such claims.[32] It applies not only to the State itself, but to any

---

[27] *See Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (cited in *Davis v. Ashley Furniture Indus.*, 2009 WL 605741 *1 (N.D. Miss., Mar. 9, 2009)).

[28] FED. R. CIV. P. 12(b)(6).

[29] *In re Great Lakes Dredge & Dock Co., LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (internal quotations and cites omitted).

[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting FED. R. CIV. P. 8(a)(2)).

[31] U.S. CONSTITUTION, AMENDMENT XI.

[32] *United States v. Tex. Tech Univ.*, 171 F.3d 279, 286 n. 9 (5th Cir. 1999); *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 342 (5th Cir. 1996).

state agency or entity deemed to be an arm of the State.[33] If applicable, it bars all actions against the State entity, whether the relief sought is injunctive, declaratory or monetary.[34] Additionally, suits against state officials for monetary damages are barred under the Eleventh Amendment if the damages would be paid out of the State treasury.[35]

The University and IHL are both considered arms of the State of Mississippi for purposes of Eleventh Amendment immunity.[36] Congress has never abrogated Eleventh Amendment immunity for purposes of a Section 1983 action or for state law breach of contract claims.[37] The Mississippi legislature specifically preserved Eleventh Amendment immunity when it included a limited waiver of sovereign immunity in state court under the Mississippi Tort Claims Act, which specifically provides that:

> Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal court guaranteed by the Eleventh Amendment to the Constitution of the United States.[38]

Accordingly, Doe's Section 1983 and breach of contract claims against the State of Mississippi, the University, and IHL are barred by the Eleventh Amendment.[39] The claims against the Individual Defendants in their official capacities are claims against the University,

---

[33] *Perez v. Region 20 Educ. Service Center,* 307 F.3d 318, 326 (5th Cir. 2002).

[34] *Pennhurst St. Scho. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984); *Briggs v. Mississippi*, 331 F.3d 499, 503 (5th Cir. 2003).

[35] *Stewart v. Jackson Co.*, 2008 U.S. Dist. LEXIS 95207, at*4 (S.D. Miss. Oct. 24, 2008) (citing *Ford Motor Co. v. Dep't of Treasury of Ind.*, 465 U.S. 89, 100, 104 S. Ct. 900 (1984)).

[36] *Washington v. Jackson State Univ.*, 532 F. Supp. 804, 814 (S.D. Miss. 2006); *State v. IHL*, 387 So.2d 89, 91 (Miss. 1980) (declaring IHL to be "a constitutionally created state agency").

[36] *Hays v. LaForge*, 113 F. Supp. 3d 883, 891 (N.D. Miss. 2015); *Whiting v. Jackson State University*, 616 F.2d 116, 127 n.8 (5th Cir. 1980) ("JSU is an agency of the state because it is a state-created political body, Miss. Code Ann. § 37-125-1 (Cum. Supp. 1979), and receives state funding."), *Carpenter v. Miss. Valley State Univ.*, 807 F. Supp.2d 570, 580 (N.D. Miss. 2011).

[37] *Voisin's Oyster House v. Guidry*, 799 F.2d 183, 186 (5th Cir. 1986).

[38] MISS. CODE ANN. § 11-46-5(4). *See also Smith v. Leflore County*, 2015 U.S. Dist. LEXIS 128533, *5 (N.D. Miss. Sept. 24, 2015).

[39] To the extent Doe's Title IX claims against the State and IHL do not otherwise fail, they are barred by the Eleventh Amendment.

and the Court therefore lacks jurisdiction over such claims as well. This Court should dismiss

Doe's Section 1983 and breach of contract claims against the State, the University, and IHL. The

Court should dismiss his Section 1983 and breach of contract claims against the Individual

Defendants in their official capacities insofar as they seek money damages.[40]

### 4.     The University, IHL, the State of Mississippi, and the Individual Defendants acting in their official capacities are not "persons" for purposes of Doe's Section 1983 claims

Even if the Court exercised jurisdiction over Doe's Section 1983 claims against the

foregoing defendants, such claims would still fail.  Section 1983 provides that "[e]very *person*

who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory

or the District of Columbia, subjects or causes to be subjected, any citizen of the United State or

other person within the jurisdiction thereof to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured in an action

at law, suit in equity, or other proper proceeding for redress . . . ."[41] Critically, neither a State,

arm of the State, nor an individual employed by such entity acting in his or her official capacity

is considered a "person" acting under color of law.[42]

IHL, as a constitutionally-created state entity, is considered an arm of the State of

Mississippi.[43] The University, like Mississippi's other public universities, is also considered an

arm of the State of Mississippi.[44] The claims against Defendants Murry and Ussery in their

---

[40] While the Eleventh Amendment acts as a jurisdictional bar, the Court's lack of jurisdiction cannot be cured by relying on supplemental jurisdiction. *Hernandez v. Tex. Dep't of Human Servs.*, 91 Fed. App'x 934, 935 (5th Cir. 2004). "The mere presence of a jurisdictional basis cannot defeat the Eleventh Amendment, lest the Amendment become a nullity." *Watson v. Texas*, 261 F.3d 436, 440 n. 5 (5th Cir. 2001).

[41] 42 U.S.C. Ann. § 1983 (emphasis added).

[42] *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70, 109 S. Ct. 2304 (1989); *Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014); *McNair v. Mississippi*, 43 F. Supp. 3d 679, 685 (N.D. Miss. 2014); *Myers v. Mississippi Office of Capital Post-Conviction Counsel*, 720 F. Supp.2d 773, 779 (S.D. Miss. 2010).

[43] *Washington*, 532 F. Supp. at 814; *IHL*, 387 So.2d at 91.

[44] *Hays*, 113 F. Supp. 3d at 891; *Whiting*, 616 F.2d at 127 n.8; *Carpenter*, 807 F. Supp.2d at 580.

official capacities are claims against the University itself.[45] Accordingly, neither IHL, the University, the State of Mississippi, nor Murry and Ussery in their official capacities can be held liable pursuant to § 1983. Doe's §1983 claims against those defendants should be dismissed.[46]

### 5.     *The Individual Defendants cannot grant Doe his requested injunctive relief*

A federal court under certain circumstances may enjoin state officials to conform their future conduct to the requirements of federal law, but that exception does not apply here. In *Ex Parte Young*, the Supreme Court "created an exception to Eleventh Amendment immunity for prospective relief against state officials who have been sued in their official capacities."[47] As articulated by the Fifth Circuit, *Ex Parte Young* "solidified the doctrine that state officers could be sued in federal court despite the Eleventh Amendment, while emphasizing the requirements that the officers have 'some connection with the enforcement of the act' in question or be 'specifically charged with the duty to enforce the statute' and be threatening to exercise that duty."[48] Thus, unless a plaintiff brings a claim for prospective injunctive relief against a state official with some connection to the requested relief, *Ex Parte Young* does not apply.[49]

Doe asks the Court to "enjoin[] Defendants from violating [his] constitutional rights and rights established under Title IX, by continuing the discriminatory unlawful disciplinary action that was issued against him, requiring the University immediately to restore Doe as a student in good standing at the University and prohibiting further disciplinary proceedings against him

---

[45] *Graham*, 473 U.S. at 165, 105 S. Ct. 3099 (1985).

[46] *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007) ("This court has also recognized that state universities as arms of the state are not 'persons' under § 1983")

[47] *Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 320 (5th Cir. 2008) (internal citation omitted).

[48] *Okpalobi v. Foster*, 244 F.3d 405, 415 (5th Cir. 2001) (internal quotation omitted).

[49] *Id.*; *Fairley v. Stalder*, 294 Fed. App'x 805, 811 (finding *Ex Parte Young* inapplicable because official capacity defendant was "not the proper party from whom to obtain relief . . ."); *El-Bawab v. Jackson St. Univ.*, 2018 U.S. Dist. LEXIS 11341, *10 (S.D. Miss. Jan. 24, 2018).

pending resolution of this matter."[50] He also wants "any finding of responsibility wholly and permanently expunged from his academic record and to a seal of all such proceeding [sic] to protect against subsequent disclosure to any other person or academic institution."[51]

As pled by Doe, he has been permanently expelled by the University with no ongoing or further disciplinary proceedings pending against him.[52] Accordingly, Doe fails to meet *Ex Parte Young's* requirement that the requested relief be prospective in nature and that there be some threat of further action. As to his requests for reinstatement, expungement, and sealing, Doe has failed to name a state official with any connection to such claim for relief. He does not allege that either Murry or Ussery has any authority to grant that relief.[53]

### 6.    *Doe has failed to state any plausible claims for relief against IHL and the State*

Pursuant to Mississippi Code Section 37-101-1, the Mississippi Legislature placed the University "under the management and control of a board of trustees to be known as the board of trustees of state institutions of higher learning." However, that hierarchy does not render each and every university decision an act of IHL. Rather, IHL "elects an executive officer as head of each university" and, in turn, those executives make a litany of decisions regarding the management of state universities that are never brought before IHL for approval.[54] Accordingly, in the absence of a showing that IHL "played any role in implementing" a challenged policy or decision or "had any legal duty to consider" such decision or policy, a plaintiff fails to state a

---

[50] Compl., at 41 [Doc. 1].
[51] *Id.*
[52] *Id.* at 22.
[53] *See El-Bawab*, 2018 U.S. Dist. LEXIS at *10 (finding that President of Jackson State University was the only named defendant with authority to grant requested injunctive relief for promotion of professor).
[54] *Barrett v. Khayat*, 1999 U.S. Dist. LEXIS 847, at *7-8 (N.D. Miss. Jan. 8, 1999).

claim against IHL merely because the state universities are statutorily under its general management and control.[55]

Doe's Complaint acknowledges that IHL had no direct role in developing or implementing the complained of policy, nor in carrying out any of the complained of actions.[56] Throughout the entire Complaint, Doe pleads as to IHL only that pursuant to "Article IX, § (5) of the bylaws and policies of the Board of Trustees of State Institutions of Higher Learning, the Chancellor of the University of Mississippi is charged with the responsibility of maintaining appropriate standards of conduct for student and is authorized to expel, dismiss, suspend, and/or place limitation on continued attendance and/or levy penalties for disciplinary violations subject to procedures of due process."[57] Doe concludes that "[t]he policies and procedures enacted by the University, pursuant to the delegation of authority granted by the Chancellor and the Board of Trustees of State Institutions of Higher Learning" violated Title IX and his due process rights.[58] As to the State of Mississippi, Doe alleges only that the State of Mississippi "is responsible for the actions of the remaining Defendants as they are its agencies, subdivisions, agents and/or employees" and that their actions "represent the actions of the State itself as a matter of law."

Doe does not allege that IHL or the State had any role in developing those policies and procedures, nor does he plead that IHL or the State was under any obligation to do so. He relies solely on IHL's statutory hierarchy over the University in his claims against IHL. Doe relies on an even more attenuated nexus with respect to the State of Mississippi. Accordingly, Doe has failed to state any plausible claims for relief against IHL and the State of Mississippi.

---

[55] *Id.*; *accord Giles v. Univ. of Miss.*, 2000 U.S. Dist. LEXIS 23781, at *6 (N.D. Miss. Aug. 29, 2000).
[56] Compl. at 2 [Doc. 1].
[57] *Id.*
[58] *Id.*

**7.    IHL, the State of Mississippi, and the Individual Defendants are not subject to liability under Title IX.**

Title IX implies a private right of action only against "education program[s] or activit[ies]" which receive federal financial assistance.[59] It does not provide for individual liability, and courts have rejected attempts to hold other non-education programs or activities liable.[60] For State and local governments, only the department or agency which receives aid is covered.[61]

Plaintiff pleads only that the University receives federal financial assistance is subject to Title IX.  The Individual Defendants are not education programs or activities and do not receive federal funding.[62] IHL is not an education program or activity that receives federal funding. The State of Mississippi is not an education program or activity. The Court should dismiss Doe's Title IX claims against the Individual Defendants, IHL, and the State of Mississippi.

**8.    Doe's Title IX claim fails to state a claim for relief against the University.**

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[63] The Supreme Court has held that Title IX implies a private right of enforcement for intentional sex discrimination or deliberate indifference to discrimination or harassment of a student on the basis of sex.[64] The

---

[59] *See* 20 U.S.C. §1682.
[60] *See Doe v. Hillsboro Ind. Sch. Dist.*, 81 F.3d 1395, 1401 n.9 (5th Cir. 1996) (noting that district courts in the Fifth Circuit have held that a Title IX claim may not be asserted against an individual); *Williams v. Bd. of Regents*, 477 F.3d 1292, 93-94 (11th Cir. 2007); *IF v. Lewisville Ind. Sch. Dist.*, 2017 U.S. Dist. LEXIS 211643, *11 (E.D. Tex. Jun. 20, 2017).
[61] *Alegria v. Texas*, 2007 U.S. Dist. LEXIS 67031, *40-43 (S.D. Tex. Sept. 11, 2007); 34 C.F.R. § 106.2(h)(1)(i)-(ii).
[62] Compl., at 32 [Doc. 1].
[63] 20 U.S.C. §1681.
[64] *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690-93, 99 S. Ct. 1946 (1979), *Franklin v. Gwinnett Co. Publ. Sch.*, 503 U.S. 60, 112 S. Ct. 1028 (1992), *Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274, 290-91, 118

Court has noted that "discrimination" is a term that covers a "wide range of intentional unequal treatment," and that Congress gave the statute a broach reach by using such a term.[65]

Some courts have opined that a student may "attack[] a university disciplinary proceeding on grounds of gender bias" under Title IX, but the Fifth Circuit has declined to do so.[66] When allowing plaintiffs to use Title IX to collaterally attack student disciplinary proceedings, other circuits have recognized four potential avenues: 1) erroneous outcome, 2) selective enforcement, 3) deliberate indifference, and 4) archaic assumptions.[67] Here, Doe seems to assert an erroneous outcome, selective enforcement, and deliberate indifference claim. While this Court should decline to adopt such theories of liability absent further instruction from the Fifth Circuit, Doe has not adequately stated a claim for relief even assuming the viability of such standards for liability.

### A.  Doe fails to plead sex bias in support of his erroneous outcome theory.

When proceeding under an erroneous outcome theory, it is still incumbent on the plaintiff to show that sex "[was] a motivating factor in the decision to discipline."[68] Accordingly, the plaintiff must not only allege facts sufficient to cast articulable doubt on the outcome of the proceedings, but also showing a particularized causal connection between the purportedly flawed outcome and actual sex bias.[69] To demonstrate that sex bias, the plaintiff may rely on evidence

---

S. Ct. 1661 (1999); *Jackson v. Birmingham Bd. of Ed.*, 544 U.S. 167, 167, 125 S. Ct. 1497 (2005); *Plummer v. Univ. of Houston*, 860 F.3d 767, 777 (5th Cir. 2018).

[65] *Birmingham Bd. of Ed.*, 544 U.S. at 175.

[66] *Yusuf v. Vassar Coll.*, 35 F. 3d 709b 715 (2d Cir. 1994); *Doe v. Miami Univ.*, 882 F.3d 579, 589 (6th Cir. 2018); *Plummer*, 860 F.3d at 777 (noting that Second Circuit has held University may be liable for imposing discipline where gender is motivating factor under two general theories); *Plummer v. Univ. of Houston*, 2015 U.S. Dist. LEXIS 189229, *50 (S.D. Tex. May 28, 2015) (noting the lack of binding precedent for erroneous outcome theory).

[67] *See id.*

[68] *Yusuf*, 35 F.3d at 715; *see also Doe v. Univ. of Colo.*, 255 F. Supp. 3d 1064, 1074 (D. Colo. 2017).

[69] *Doe v. Cummins*, 662 F. App'437, 443 (6th Cir. 2016)

such as "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decisions-making that also tend to show the influence of gender."[70] A plaintiff may not rely on general unsubstantiated assertions of bias, the fact that a majority of respondents are male rather than female, purported preferential treatment of complainants over respondents, allegations that investigative methods were in violation of Title IX's requirements, or assertions that the investigation and adjudication constituted an effort to achieve a predetermined result, as such allegations fail to exhibit sex bias.[71]

Here, Doe relies only on conjecture and sex-neutral allegations in support of his erroneous outcome theory.[72] Without pleading supporting facts, Does alleges that there is a "pattern of decision-making whereby the disciplinary procedures governing sexual assault claims are discriminatorily applied in favor of guilt on the part of the male students," that "male students in misconduct cases at the University are discriminated against solely on the basis of their sex," and that "[m]ale students are typically found guilty regardless of the evidence and certain exculpatory evidence is excluded from consideration."[73] When he does plead facts, Doe puts forth only gender-neutral allegations, claiming in pertinent part that he was subjected to a disciplinary process "marked by procedural flaws, sex based biased [sic], and selective enforcement," that the result was "based on flawed and distorted facts and/or application by the Defendants," that the Title IX officer "deliberately and recklessly and intentionally refused to

---

[70] *Yusuf*, 35 F.3d at 715.

[71] *Mallory v. Ohio Univ.*, No. 01-4111, 76 Fed. App'x 634, 638 (6th Cir. Sept. 11, 2003); Doe v. Univ. of Cincinnati, 2018 U.S. Dist. LEXIS 51833, *14 (S.D. Ohio Mar. 28, 2018) ("Because Plaintiff has failed to show how the alleged procedural deficiencies are connected to gender bias, Plaintiff fails to state a claim under Title IX based on erroneous outcome theory."); *Doe v. Univ. of Denver*, 2018 U.S. Dist. LEXIS 40926, *27-29 (D. Colo. Mar. 13, 2018); *Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009); *Doe v. Univ. of Colo.*, 255 F. Supp. 3d at 1079.

[72] Compl., at 31-37 [Doc. 1].

[73] *Id*. at 34-35.

accept evidence from Doe and misrepresented the statements of witnesses," that the evidence was not weighed in his favor and exculpatory evidence was overlooked, that the sanction imposed was arbitrary and capricious, and that the investigation was not "adequate, reliable, and impartial."[74]

Concentrating only on his obligation to plead facts casting articulable doubt on the outcome of the proceedings, Doe wholly overlooks his obligation to also plead facts showing a particularized causal connection between the purportedly flawed outcome and actual sex bias. Aside from legal conclusions masquerading as factual allegations, Doe pleads no "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decisions-making that also tend to show the influence of gender." Doe's legal conclusions and sex-neutral complaints regarding the University's Title IX procedures are insufficient to state a claim under an erroneous outcome theory.

### B.  Doe fails to plead sex bias in support of his selective enforcement theory.

Likewise, in support of a selective enforcement claim, Doe must still allege sex bias.[75] To successfully assert a claim under the selective enforcement theory, the plaintiff must "demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the University."[76] Doing so requires "identification of a comparator of the opposite sex who was treated more favorably by the educational institution when facing similar disciplinary charges."[77] The complainant is not considered an adequate comparator for purposes

---

[74] *Id*. at 33-34.
[75] *Yusuf*, 35 F.3d at 714; *Mallory*, 76 Fed. App'x at 638.
[76] *Mallory*, 76 Fed. App'x at 641 (citing *Curto v. Smith*, 248 F. Supp. 2d 132, 146-47 (N.D.N.Y. 2003); *see also Doe v. Univ. of the South*, 687 F. Supp. 2d at 756 (requiring plaintiff to plead female was "in circumstances sufficiently similar" but was "treated more favorably.").
[77] *Doe v. Case Western Reserve Univ.*, 2015 U.S. Dist. LEXIS 123680, *15 (N.D. Ohio Sept. 16, 2015).

of the analysis.[78] Here, Doe does not identify a female comparator nor does he even allege that a female in sufficiently similar circumstances was treated more favorably than he was.

### C. *Doe fails to plead a claim for deliberate indifference.*

The deliberate indifference theory allows a plaintiff to recover when an educational institution is deliberately indifferent to the sexual harassment of a student.[79] Under the deliberate indifference standard, a plaintiff must "demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct."[80] For a school to be liable under Title IX, "its response, or lack thereof, to the harassment, must be clearly unreasonable in light of the known circumstances." As noted by the Fifth Circuit, "[t]hat is a high bar and neither negligence nor mere unreasonableness is enough."[81] The Supreme Court has only recognized the possibility of a deliberate indifference claim under Title IX when there is an allegation of sexual harassment.[82]

Here, Doe attempts to raise a deliberate indifference claim based on purported procedural insufficiencies in the Title IX process. He asserts that "Defendants had knowledge that the policies of the University were in violation of Title IX, biased against male students accused of sexual assault and void of due process protections, yet deliberately failed to remedy the situation."[83] Although the Fifth Circuit has not given clear instruction regarding the availability of such a claim, the Sixth Circuit has explicitly rejected such a theory of liability. In *Sanches v. Carrolton-Farmers Branch Independent School District*, where the court rejected a plaintiff's

---

[78] *Id.* (citing *Sterrett v. Cowan*, 85 F. Supp. 3d 916 (E.D. Mich. 2015) (vacated on req. of parties)).
[79] *Sanches v. Carrollton-Farmers Br. Ind. Sch. Dist.*, 647 F. 3d 156, 167 (5th Cir. 2011); *Mallory*, 76 F. App'x at 638.
[80] *Mallory*, 76 F. App'x at 638; *Doe v. Univ. of the South*, 687 F. Supp. 2d at 756.
[81] *Sanches*, 647 F.3d at 167.
[82] *Doe v. Miami Univ.*, 882 F.3d at 590 (*citing Horner v. Ky. High Sch. Athl. Ass'n.*, 206 F.3d 685, 691-93 (6th Cir. 2000).
[83] Compl., at [Doc. 1].

attacks on the district's investigative process noting that Title IX does not require "flawless investigations or perfect solutions," the court only considered the adequacy of the school's process because the plaintiff had alleged that the school was deliberately indifferent to her claims of sexual harassment.[84]

Doe makes no allegations regarding sexual harassment, and his deliberate indifference claim fails. Even if a court created a cause of action for deliberate indifference to a plaintiff's Title IX rights in the absence of a sexual harassment allegation, Doe has still failed to tie his allegations of procedural insufficiencies to sex-based bias or discrimination. Doe's deliberate indifference claim should be dismissed.

### 9.    Doe's claims for monetary damages under Title IX are barred by sovereign immunity

The states' immunity from suit in federal court stems from both the Eleventh Amendment and the "structure of the original Constitution itself."[85] While the Eleventh Amendment acts as a jurisdictional bar in federal court, the states' inherent sovereign immunity protects them from private claims in state or federal court.[86] Although the two concepts frequently overlap, state sovereign immunity is broader than that described by the Eleventh Amendment.[87]

Any waiver of sovereign immunity is construed strictly and "in favor of the sovereign."[88] A mere waiver of sovereign immunity for purposes of federal jurisdiction does not implicitly carry with it a waiver as to any other form of relief.[89] To subject a state to suit for money damages, the waiver "must extend unambiguously to such monetary claims."[90]

---

[84] 647 F.3d at 170.
[85] *Alden v. Maine*, 527 U.S. 706, 733, 119 S. Ct. 2240 (1999).
[86] *See id.* at 712.
[87] *See id.* at.713.
[88] *Lane v. Pena*, 518 U.S. 187, 192, 116 S. Ct. 2092 (1996).
[89] *See Sossamon v. Texas*, 563 U.S. 277, 285, 131 S. Ct. 1651 (2011).
[90] *Id.* (quoting *Lane*, 518 U.S. at 192).

The text of Title IX does not provide a private right of action or a damages remedy.[91] In finding such private right of action implied, the U.S. Supreme Court determined that "absent a contrary indication in the text or history of the statute," Congress is understood to have operated under the general rule that federal courts have the power to award "any appropriate relief in a cognizable cause of action brought pursuant to a federal statute."[92] Following the Court's determination that the text of the Rehabilitation Act did not adequately waive the states' sovereign immunity for monetary damages, Congress passed the Rehabilitation Act Amendments of 1986, which are likewise applicable to Title IX. Section 1003 of the Rehabilitation Act Amendments of 1986 explicitly waives the states' jurisdictional immunity under the Eleventh Amendment, but it does not expressly waive the states' inherent sovereign immunity or subject the states to money damages. 42 U.S.C. § 2000d-7(a)(2)  provides:

> In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies at law and in equity) are available to the same extent as such remedies are available in the suit against any public or private entity other than a State.

The Supreme Court has already found that the language contained at Section 2000d-7 is subject to multiple interpretations and lacks the clear statement required to subject the federal government to an award of damages.[93] While the Court has found that Title IX impliedly creates a right of action for "any appropriate relief," neither the text of Title IX nor the subsequent amendments enacted by Congress sufficiently waive the states' sovereign immunity or subject them to money damages. Doe's Title IX claims for money damages are barred by Mississippi's sovereign immunity.[94]

---

[91] 20 U.S.C. §§ 1682, 1683.
[92] *Franklin v. Gwinnett County Publ. Sch. Dist.*, 503 U.S. 60, 70 (1992).
[93] *Lane*, 518 U.S. at 200.
[94] This issue is currently pending before the Eighth Circuit Court of Appeals in *Fryberger v. University of Arkansas-Fayetteville*, No. 16-4505.

**10.     *Plaintiff's breach of contract claim is barred by the Mississippi Tort Claims Act as to IHL, the University, the State of Mississippi, and the Individual Defendants***

The Mississippi Tort Claims Act ("MTCA") provides the exclusive avenue for claims against the University and its employees.[95] Essentially, the MTCA waives Mississippi's sovereign immunity in certain circumstances, but sets out twenty-five exemptions.[96] If any of the exemptions apply, immunity is preserved.[97] In addition to applying to strict tort claims, the MTCA also extends to quasi-tort claims and implied contract claims.[98]

As a threshold matter, prior to filing a claim under the MTCA, a claimant must provide written pre-suit notice.[99] Failure to comply with such notice provisions is fatal to a plaintiff's suit.[100] Under the substantive provisions of the MTCA "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties."[101] Moreover, "[a] governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim: . . . [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused."[102]

Here, Doe presses a claim for breach of an unwritten contract. Doe failed to file pre-suit notice for any of those claims, and they are all barred by the MTCA. Doe's state-law claims are barred by the MTCA and should be dismissed in their entirety.[103]

---

[95] *Taylor v. Epps*, 2015 U.S. Dist. LEXIS 64569, at *16 (S.D. Miss. May 18, 2015).
[96] *Id.*
[97] *Id.*
[98] *Haggard v. City of Jackson*, 84 So.3d 797, 800 (Miss. 2011).
[99] MISS. CODE. ANN. 11-46-11(2).
[100] *See Conrad v. Holder*, 825 So.2d 16, 19 (Miss. 2002).
[101] MISS. CODE ANN. 11-46-72(7).
[102] MISS. CODE ANN. 11-46-9(1)(d).
[103] To the extent Doe may attempt to argue that his post-suit notice filed on April 14, 2018 cures such deficiency, he is incorrect. *Gorton v. Rance*, 52 So. 3d 351, 358 (Miss. 2011); *Lee v. Ishee*, 383 F. App'x 499, 501 (5th Cir. 2010).

**11.**      *Doe fails to state a breach of contract claim*

A breach of contract claim has two elements: (1) the existence of a valid and binding contract, and (2) a showing that the defendant has broken or breached it.[104] Doe fails to allege the existence of a contract, implied or otherwise, between himself and the Individual Defendants. The Court should dismiss Doe's breach of contract claim as to the Individual Defendants.

Doe alleges that the other Defendants breached contractual obligations to him "by failing to abide by Title IX, subjecting Doe to a gender bias and failing to comply with [their] own policy and procedures, and by the adoption and implementation of unconstitutional customs, policies and practices in the implementation of Title IX at the University."[105] However, his allegations do not identify an express contract containing any such terms, and he has expressly not stated an implied contract theory.[106] His contract claims should be dismissed.

**12.**      *Doe's procedural due process rights were not violated*

Doe bases his due process claims on the premise that the University should have afforded him the protections afforded to criminal defendants. For example, he alleges that he was deprived of due process because he could not directly cross-examine witnesses, because his attorneys were not allowed to participate in the disciplinary hearing, and because he did not have the ability to subpoena witnesses to attend. However, a "university is not a court of law, and it is neither practical nor desirable it be one."[107] The Fifth Circuit has also held that "[d]ue process in

---

[104] *Maness v. K & A Ent. of Miss.*, 2018 Miss. LEXIS 61, *10 (Miss. Feb. 8, 2018) (quoting *Business Communications, Inc. v. Banks*, 90 So. 2d 802, 805 (Miss. 2012)).
[105] Compl., at 40.
[106] *Id*. at 40-41.
[107] *Plummer v. Univ. of Hous.*, 860 F.3d 767, 773 (5th Cir. 2017) (*citing Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 n.1 (6th Cir. 2005)).

the context of [a student disciplinary proceeding] is not to be equated with that essential to a criminal trial …."[108]

The Fifth Circuit has long held that "due process requires notice and some opportunity for hearing before a student at a tax-supported college is expelled for misconduct."[109] However, the student "is not entitled to the 'opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident."[110] Rather,

> the amount of process due in university disciplinary proceedings is based on a sliding scale that considers three factors: (a) the student's interests that will be affected; (b) the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (c) the university's interests, including the burden that additional procedures would entail.[111]

The interests implicated by the first and third *Mathews* factors are clear. Doe has an interest in the outcome of the disciplinary proceedings, and the University has an interest in maintaining a safe learning environment and preserving administrative resources.[112] Doe's procedural due process claim, then, is to be considered in light of the risk of an erroneous deprivation of his interests and the probable value of additional or substitute procedural safeguards. The Fifth Circuit recently found that students accused of sexual misconduct were not

---

[108] *Jenkins v. La. State Bd. of Educ.*, 506 F.2d 992, 1000 (5th Cir. 1975); *see also Nash v. Auburn Univ.*, 812 F.2d 655, 664 (11th Cir. 1987) ("Due process requires that appellants have the right to respond, but their rights in the academic disciplinary process are not co-extensive with the rights of litigants in a civil trial or with those of defendants in a criminal trial.").

[109] *Plummer*, 860 F.3d at 773 (*citing Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961)). *See also Esfeller v. O'Keefe*, 391 Fed. App'x 337, 342 (5th Cir. 2010) (holding that a "student subject to school disciplinary proceedings … must be given notice of the charges against him, an explanation of what evidence exists against him, and "an opportunity to present his side of the story" (*citing Goss v. Lopez*, 419 U.S. 565, 581 (1975)).

[110] *Esfeller*, 391 Fed. App'x at 342 (*citing Goss*, 419 U.S. at 583).

[111] *Id*. (*citing Mathews v. Eldridge*, 424 U.S. 319, 335 (1976))

[112] *Id*. at 773-74.

deprived of due process where they received "meaningful opportunities to challenge the University's allegations, evidence, and findings."[113] A public university discharges its due process obligations in the student discipline context when students are "able to fully discuss the charges against them and present evidence supporting their contentions."[114] The examination should focus on whether the student had an opportunity to "respond, explain, and defend."[115]

The process provided to Doe during his disciplinary proceedings gave him a meaningful opportunity to address the Judicial Council and to challenge the evidence presented against him. As discussed above, he had numerous opportunities to present testimony and documentary evidence to the Judicial Council.[116] He was also given access to an appeal procedure, which ultimately led to a second full-fledged disciplinary hearing.[117]

Doe's Complaint lists numerous purported procedural deficiencies that he claims deprived him of due process. Each of these assertions fails to state a claim.

Doe complains that the Judicial Council heard hearsay evidence,[118] but "rights in a student disciplinary hearing may properly be determined upon the hearsay evidence of school administrators who investigate disciplinary infractions."[119] Doe's pleadings also fail to allege any harm or prejudice that came from the admission of any such evidence.

---

[113] *Id*. at 774.
[114] *Parker v. Duffey*, 251 Fed. App'x 879, 883 (5th Cir. 2007)
[115] *Flaim*, 418 F.3d at 635; *Doe v. Cummins*, 662 Fed. App'x 437, 446 (6th Cir. 2016) (*cited with approval in Plummer v. Univ. of Hous.*, 860 F.3d 767, 774 (5th Cir. 2017)).
[116] *Supra*, at 3.
[117] Compl., at 14-17 [Doc. 1].
[118] *Id*. at 13-14.
[119] *Tasby v. Estes*, 643 F.2d 1103, 1106 (5th Cir. 1981); *see also Crook v. Baker*, 813 F.2d 88, 99 (6th Cir. 1987) ("It is clear that admission of hearsay evidence [at a school disciplinary proceeding] is not a denial of procedural due process.").

Doe also complains that he was not allowed to subpoena witnesses and that the witnesses who testified were not placed under oath.[120] The University has no subpoena power, much less the obligation to grant it to a respondent in a disciplinary hearing. Moreover, as Judicial Council proceedings are not court proceedings, there is no requirement for witnesses to be sworn. Moreover, Doe *did* call witnesses at the hearing, and his Complaint does not allege prejudiced by his lack of subpoena power.[121] "[D]isciplinary proceedings do not require formal rules of evidence or all the procedural protections of a trial."[122]

While Doe submitted written questions to be asked of witnesses (including the complainant) during the disciplinary hearings, he asserts that he should have been allowed to directly confront and cross-examine the complainant and complains that "not all of his questions were asked."[123] Defendants have found no Fifth Circuit case establishing a constitutional right to direct cross-examination in a student disciplinary hearing. The Sixth Circuit recently held that a "circumscribed form of cross-examination" requiring submission of questions to the hearing panel was constitutionally sufficient under *Mathews*, as schools are not burdened to oversee the process of direct cross-examination with all of its intendent objections.[124] Nor can Doe establish a constitutional right for *all* of his submitted questions to be asked. There is no authority limiting the Judicial Council's ability to screen questions for relevance or repetition – the same authority a court would have in a criminal trial.

---

[120] Compl., at 13-14; 27; 30 [Doc. 1].

[121] *Id*. at 18, 20-21.

[122] *Plummer v. Univ. of Houston*, No. 4:14-CV-2959, 2015 U.S. Dist. LEXIS 189229, at *43 (S.D. Tex. May 28, 2015), *aff'd* 860 F.3d 767 (5ᵗʰ Cir. 2017).

[123] Compl., at 26 [Doc. 1].

[124] *Doe*, 662 Fed. App'x at 448. *See also Nash v. Auburn Univ.*, 812 F.2d 655, 664 (11th Cir. 1987) (finding "no denial of appellants' constitutional rights to due process by their inability to question the adverse witnesses in the usual, adversarial manner").

In fact, the hearing transcript reflects that the Judicial Council asked Jane Roe *more than ninety questions* submitted by Doe.[125] After the Council asked the questions Doe had submitted in advance, he submitted additional questions, which the Council also asked.[126] The Council asked Jane Roe questions about how she came to be in Doe's dorm room and who else was there,[127] her prior communications with Doe,[128] the nature and timing of the sexual encounter between Doe and Jane Roe,[129] any actions she took to resist or escape Doe's advances,[130] her feelings about Doe's relationship with another female friend,[131] her actions following the sexual encounter with Doe and her contact with the Title IX coordinator and campus police,[132] and the results of a medical examination for evidence of sexual assault that she underwent after the encounter.[133] Especially in light of the Judicial Council's extensive questioning of Jane Roe at his behest, Doe was not deprived of due process.

Doe's also alleges that his due process rights were violated because "[t]he use of the 'preponderance of the evidence' standard as the threshold legal standard for an adjudication of 'Responsible' or guilty under the totality of the circumstances presented is illegal and unconstitutional and was/is arbitrary and capricious."[134] Defendants have found no authority that would constitutionally require the University to use a higher burden of proof for a student disciplinary hearing.

---

[125] Ex. "F" (November Disciplinary Hearing Transcript), at 32:1-65:25.
[126] *Id*. at 60:12-65:25.
[127] *Id*. at 32:14-34:14.
[128] *Id*. at 60:18-61:8.
[129] *Id*. at 34:15-37:10
[130] *Id*. at 37:11-43:11.
[131] *Id*. at 43:12-44:10.
[132] *Id*. at 44:17-53:20; 54:21-60:10.
[133] *Id*. at 53:24-54:20.
[134] Compl., at 25-26 [Doc. 1].

Doe also asserts that "[d]ue process imposes a duty on the State to disclose exculpatory material and favorable evidence to a defendant."[135] The University did not (and could not) charge Doe with a crime. He was never a "defendant" in his disciplinary proceedings, and he was not entitled to the full range of protections owed to a criminal defendant. Doe claims that the University had a duty to preserve surveillance footage from outside his dorm room that could have showed "identity of persons entering and exiting John Doe's dormitory, the times of their entry and exit, and the dispositions of persons as they entered and departed."[136] At the hearing, Doe told the Judicial Council that he thought the video would have shown that Jane Roe "wasn't upset" when she left his dorm room after their sexual encounter.[137] Defendants are aware of no authority requiring the University to preserve such surveillance footage, if it existed. Even if such footage did exist, though, it would not have been exculpatory because Jane Roe never claimed that she was visibly upset immediately after leaving Doe's dorm room. Rather, she testified at the hearing and reported to the Title IX coordinator that she and Doe exchanged a hug and rode the elevator down in silence after the sexual encounter.[138]

Doe alleges throughout his Complaint that the University exhibited "bias" toward him throughout the disciplinary process. Notably, he has not alleged that any particular member of the Judicial Council or the Appellate Consideration Board was biased against him. Doe does allege that he was denied due process because a substitute Judicial Council member had to be appointed on the day of the second hearing.[139] However, he does not allege any facts that, if proven, would show that any member of the Judicial Council (including the substituted member)

---

[135] Compl., at 25 [Doc. 1] (*citing Manning* v. *State,* 884 So. 2d 717 (Miss. 2004); *Armstrong v. State,* 214 So. 2d 589 (Miss. 1968)).
[136] *Id.*, at 11.
[137] Ex. "H" (November Disciplinary Hearing Transcript), at 137:14.
[138] *Id.* at 9:11-10:8; Ex. "B" (Ussery report), at 2.
[139] Compl., at 18, 27 [Doc. 1].

harbored bias toward him.[140] Moreover, he was given an opportunity to challenge any Council

member's participation in the hearing, and he declined to do so.[141]

Doe also claims that the University was biased against him because the Judicial Council

did not declare a "mistrial" or punish Jane Roe after she mentioned the outcome of the first

disciplinary hearing to the Judicial Council during the second hearing.[142] Again, though, the

Judicial Council was not bound by rules of court, and Defendants are aware of no authority that

would preclude the Judicial Council from reviewing the record from the prior hearing. The

second Judicial Council would certainly have been aware of the prior proceedings, as Doe

himself sought to play portions of an audio recording of the first hearing at the second hearing.[143]

Doe primarily directs his bias allegations at Defendant Ussery. However, Ussery was not

a decision-maker, and she did not participate in the second hearing at all.[144] Her only

involvement in the hearing was to provide a written report summarizing Jane Roe's allegations

and her interviews of various witnesses.[145] Ussery's report did not reach a conclusion as to

whether Doe was responsible for violating the University's sexual misconduct policy. The report

made no findings as to the credibility of the various witnesses, and it made no recommendations

as to how the Judicial Council should act. The report also included a summary of Doe's

statement to Ussery, given in the presence of Doe's attorney, in which Doe denied Jane Roe's

allegations.[146] Doe alleges that Ussery should have interviewed other witnesses and sought other

---

[140] *See Pham v. Univ. of La. at Monroe*, 194 F. Supp. 3d 534, 544 (W.D. La. 2016) (holding that "there is a presumption of honesty and integrity in those serving as adjudicators" and that, "[i]n order to make out a procedural due process claim based on bias, actual bias must be proved"
[141] Ex. "H" (November Disciplinary Hearing Transcript), at 3:22-25.
[142] Compl., at 18-19 [Doc. 1]
[143] Compl., at 61-62 [Doc. 1].
[144] *Id*. at 18.
[145] *Id*.; *see* Ex. "B" (Ussery report). This report is properly before the Court on a motion to dismiss, as its contents are referenced throughout the Complaint. *See* Compl., at 12-13, 16-18, 24, 29, 33-34.
[146] *Id*.

evidence before writing her report.[147] However, as noted above, Doe was allowed to challenge

Ussery's findings and to call his own witnesses and provide supplementary evidence.

Doe also complains that Ussery's report was submitted in its original form to the second

Judicial Council.[148] However, he is not correct that the first Appellate Consideration Board found

that report "to be biased and lack discussion of exculpatory evidence."[149] That Appellate Board

noted that, during the first hearing, Ussery read her the "Allegations" portion of her report when

asked for a "case summary" by the Judicial Council.[150] Because she did not read the various

witness statements summarized in her report, including the Respondent's statement, the first

Appellate Board found that the Judicial Panel "could have assumed that the summary was Ms.

Ussery's determination of the facts of the case."[151] The Board further noted:

> Furthermore, if the Complainant is participating in the hearing and witnesses are
> available, the panel, while having access to the Title IX Coordinator's report,
> should not automatically call the Coordinator as a witness as the policy states that
> the hearing board, and not the Title IX Coordinator, is the finder of fact.[152]

Doe takes no issue with the Board's findings or its recommendation, which Ussery

followed to the letter by not testifying or appearing at the second hearing.

The first Appellate Board also did not fault Ussery for failing to include exculpatory

information in her report. Rather, it found that:

> The complainant and respondent stated strong discrepancies as to the length of
> time during which sexual activity occurred. Because of the lack of follow-up
> questioning by the Judicial Council, the Appellate Consideration Board is unable
> to assess if the Judicial Council realized the discrepancy and considered it. (Of
> course, the panel has the right to weigh the value of any information introduced,
> and information that is not relevant should not be considered.)

---

[147] *Id*. at 12-13.
[148] *Id*. at 16.
[149] *Id*.
[150] Ex. "H" (Appellate Consideration Board findings). This document is properly before the Court on a motion to dismiss, as its contents are discussed in the Complaint. *See* Compl., at 15-16.
[151] *Id*.
[152] *Id*.

26

Indeed, during the second hearing, Roe was asked about the length of time that the sexual encounter lasted.[153] In other words, both of the Appellate Consideration Board's concerns were specifically addressed during the course of the second hearing.

Doe was not deprived of any procedural right to which he was entitled. He received a full and fair opportunity to testify, call witnesses, introduce evidence, and challenge evidence presented by the complainant and the Title IX coordinator. This Court should dismiss his procedural due process claims.

### 13.   *Doe's substantive due process rights were not violated*

Doe appears to claim that the Judicial Council's determination that he was responsible for a violation of the University's sexual misconduct policy violated his substantive due process because it was "contrary to the substantial evidence and was arbitrary and capricious."[154] "To state a substantive due process claim, a plaintiff must show that the government's deprivation of a property interest was arbitrary or not reasonably related to a legitimate governmental interest."[155] The Supreme Court has emphasized that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense…."[156] "Expelling a student after a hearing, a supplemental hearing, and an appeals process is not the type of conduct which shocks the conscience as a matter of law."[157]

There was nothing constitutionally arbitrary about the Judicial Council's determination that Doe had engaged in sexual misconduct when the complainant testified that he did so,

---

[153] Ex. "F" (November Disciplinary Hearing Transcript), at 39:9-18, 41:15-24.
[154] Compl., at 21 [Doc. 1].
[155] *Williams v. Tex. Tech Univ. Health Scis. Ctr.*, 6 F.3d 290, 294 (5th Cir. 1993)
[156] *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846, (1998) (*citing Collins* v. *Harker Heights,* 503 U.S. 115, 129 (1992))
[157] *Pham v. Univ. of La. at Monroe*, 194 F. Supp. 3d 534, 548 (W.D. La. 2016).

especially in light of his *own* testimony that Jane Doe did not give him verbal consent and was initially "unsure" of whether she wanted to have sex. As Doe's Complaint notes, the Judicial Council's decision included a "credibility determination" just as most trials do.[158] The fact that the Judicial Council resolved that determination in Jane Roe's favor did not deprive Doe of substantive due process.

### 14.  *The individual Defendants are entitled to qualified immunity*

Defendants Ussery and Murry are entitled to qualified immunity as to Doe's claims under Section 1983. Designed to protect "all but the plainly incompetent or those who knowingly violate the law," the qualified immunity defense "requires courts to enter judgment in favor of a government employee unless the employee's conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"[159] Where a defendant in a Section 1983 suit pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff has the burden to establish that the alleged conduct violates clearly-established law.[160]

The question of qualified immunity is to be determined as a matter of law.[161] Moreover, it requires a conduct-based inquiry,[162] not an abstract legal or factual inquiry. A plaintiff must meet a heightened pleading requirement – he must allege specific conduct giving rise to a constitutional violation, and he may not rely on mere conclusory allegations.[163] The pleading

---

[158] Compl., at 30 [Doc. 1].

[159] *Morse v. Frederick*, 551 U.S. 393, 429 (2007) (Breyer, J., concurring in part and dissenting in part) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[160] *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010) (*citing Thompson v. Upshur County, TX*, 245 F.3d 447, 456 (5th Cir. 2001).

[161] *E.g., Elder v. Holloway*, 510 U.S. 510, 515-16 (1994).

[162] *Wood*, 134 S.Ct. at 2067.

[163] *Wicks v. Miss. St. Employment Servcs*., 41 F.3d 991, 994-95 (5th Cir. 1995); *King v. Lawrence County Bd. of Educ.*, 2:12-CV-68, 2013 WL 319286, at *2 (S.D. Miss. Jan. 28, 2013).

must describe conduct "clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[164]

To disprove the applicability of qualified immunity, a plaintiff must satisfy a two-prong test.[165] At the dismissal stage, the court must determine whether the facts alleged make out a violation of a constitutional right.[166] If so, the issue becomes objective legal reasonableness, and the court must decide whether the right at question was clearly-established at the time of defendant's alleged misconduct.[167] Because qualified immunity is an immunity from suit and not merely a defense to liability, it should be resolved at the earliest possible stage.[168]

As discussed above, the only pertinent action that Defendant Ussery took was to prepare an investigative report summarizing witness interviews. Doe disagreed with some witnesses' statements and thought that Ussery should have included additional details in her report, but he had a full and fair opportunity to challenge her report and submit additional evidence or corrections. Doe has not alleged any facts that, if proven, could establish that Ussery violated his constitutional rights, much less a clearly-established constitutional right.

Doe alleges that, during the second disciplinary hearing, Defendant Murry: (1) conferred with the Judicial Council and the University's General Counsel after Doe objected to Jane Roe's reference to the outcome of the first hearing, (2) "affirmatively sanctioned and ratified" that statement, and (3) "inappropriately met with the Council for approximately one hour and

---

[164] *Wood v. Moss*, 134 S.Ct. 2056, 2067 (2014); *Ashcroft*, 131 S.Ct. at 2083; *Stauffer*, 741 F.3d at 583-84.
[165] *Marquez v. Garnett*, No. 13-50599, 2014 WL 1779210, at *2 (5th Cir. May 6, 2014).
[166] *Pearson*, 555 U.S. at 232.
[167] *Id.; Baker v. Pound*, 75 F.3d 190, 198 (5th Cir. 1996).
[168] *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009); *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) ("[Addressing] the defendant's assertions of qualified immunity before discovery has taken place is *precisely* the point of qualified immunity: to protect public officials from expensive, intrusive discovery until and unless the requisite showing overcoming immunity is made.").

interfaced with the deliberative process of the panel."[169] Doe also mentions that Defendant Murry should have "discovered," "obtain[ed]," or "consider[ed]" additional evidence during the disciplinary proceedings, but he does not actually allege that Murry was responsible for or actually undertook any investigation.[170] None of these actions, even if proven, would establish that Murry violated Doe's clearly-established constitutional rights.

Defendants Murry and Ussery are entitled to qualified immunity. This Court should dismiss Doe's claims against them.

**CONCLUSION**

John Doe accepted enrollment at the University with full knowledge of its student conduct code and, specifically, the sexual misconduct provisions. Consistent with its student discipline procedure, the University investigated allegations made by Jane Roe against John Doe. Two separate tribunals found him responsible for sexual misconduct after hearing hours of live witness statements and considering various documentary submissions. The final appeal panel imposed a sanction of expulsion, an outcome within its disciplinary authority. While John Doe dislikes the result, his disappointment does not create a claim against the University under Title IX or the Individual Defendants under Section 1983. This Court should dismiss the Complaint.

THIS, the 18th day of April, 2018.

---

[169] Compl., at 19, 21 [Doc. 1].
[170] *Id.*, at 2-3 [Doc. 1].

Respectfully submitted,

**THE UNIVERSITY OF MISSISSIPPI, STATE INSTITUTIONS OF HIGHER LEARNING, TRACY MURRY, HONEY USSERY, AND THE STATE OF MISSISSIPPI**

*s/ Paul B. Watkins, Jr.*
J. CAL MAYO, JR. (MB NO. 8492)
PAUL B. WATKINS, JR. (MB NO. 102348)
J. ANDREW MAULDIN (MB NO. 104227)
ATTORNEYS FOR DEFENDANTS

OF COUNSEL:

MAYO MALLETTE PLLC
5 University Office Park
2094 Old Taylor Road
Post Office Box 1456
Oxford, Mississippi 38655
Tel: (662) 236-0055
Fax: (662) 236-0035
cmayo@mayomallette.com
pwatkins@mayomallette.com

**CERTIFICATE OF SERVICE**

I, Paul B. Watkins, Jr., one of the attorneys for Defendants, do certify that I have

electronically filed this document in the ECF system with the Clerk of the Court which sent

notification of the filing to all attorneys of record.

THIS, the 18th day of April, 2018.

_s/ Paul B. Watkins, Jr._
PAUL B. WATKINS, JR.