**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

JOHN DOE                                                                              **PLAINTIFF**

**V.**                                                  **CIVIL ACTION NO.: 3:18CV63-DPJ-FKB**

**STATE OF MISSISSIPPI, ET AL.**                                        **DEFENDANTS**

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY AND EXPEDITED
DISCOVERY**</u>
<u>**\*URGENT AND NECESSITOUS RELIEF REQUESTED\***</u>

COMES NOW, Plaintiff John Doe, by and through undersigned counsel of record and

pursuant to Fed. R.Civ. P. 16 and L.U.Civ.R. 16(b)(3)(B) and files this, his Memorandum of Law

in Support of his Motion for limited, expedited discovery.  In support thereof, the Plaintiff would

show the Court as follows:

<u>**PROCEDURAL BACKGROUND**</u>

Plaintiff is a student who seeks to redress for his improper expulsion from the University

of Mississippi on November 17, 2017.  Following a false allegation of sexual misconduct, the

Plaintiff was subjected to an unfair and gender-biased investigation by the University of

Mississippi's Title IX office.  The investigation and subsequent disciplinary proceedings instituted

against the Plaintiff, like many others, favored female students over male students and were

conducted in a manner that violated the Plaintiff's constitutional rights and ultimately resulted his

expulsion from the University. Throughout the course of the investigation and the associated

appeal process, the Defendants failed to apply the same standards to the Plaintiff as they did to his

female accuser and failed to take steps to protect the Plaintiff.  In addition, certain actions and

omissions of Defendants Murry and Ussery were deliberate, intentional and malicious.

On March 9, 2018, the Plaintiff moved for preliminary injunctive relief. [Doc. 7] In determining whether to grant the requested relief, the Court will consider the likelihood that he will prevail on the merits, whether or not there is a substantial threat that the Plaintiff will suffer irreparable injury if the injunction is not granted, whether the potential injury to the Plaintiff outweighs the threat and harm to the Defendants, and if the requested injunction would disserve the public interest. *See Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012); *Canal Auth. of the State of Florida v. Calloway*, 489 F.2d 567, 573 (5th Cir. 1974). Defendants have not yet responded to the pending motion for preliminary injunction, but have filed a Rule 12 Motion to Dismiss. Included within the Rule 12 Motion to Dismiss is the assertion of a qualified immunity defense by Defendants Murry and Ussery. A stay was subsequently issued by the Court.

## ARGUMENT

In support of his motion for preliminary injunction, Plaintiff provided the Court with information known and available to him at the time. Included within the materials presented to the Court were three Affidavits, copies of University policy, training materials from the University, documents relating to the University's investigation and documents relating to the disciplinary action taken against the Plaintiff. [Doc. 7] The Plaintiff could not present certain evidence relating to the policy claims and suspected actions/omissions of Tracy Murry and Honey Ussery and other State defendants in further detail because the information has not been made available by the defendants.

The Plaintiff's request for the tailored discovery detailed above is being made in order to present information to the Court relating to fact questions which are relevant to the pending preliminary injunction motion as to all Defendants and the issue of Murry and Ussery's qualified

immunity assertions.  L. U. Civ. R. 16 (b)(3)(B) provides, in part, that the decision whether to permit discovery on issues related to a motion asserting an immunity or jurisdictional defense and whether to permit any portion of the case to proceed pending resolution of the motion are decisions committed to the discretion of the court, upon a motion by any party seeking relief. *See* L. U. Civ. R. 16(b)(3)(B).  The situation herein is exactly the type of situation that Local Rule 16(b)(3)(B) contemplates when allowing the Court the discretion to proceed with other aspects of the case during a pending immunity motion.  Plaintiff seeks an injunction so that no further irreparable harm will continue during the pendency of the case and so that he may obtain prospective relief.  Consistent with L. U. Civ. R. 16(b)(3)(B), immunity-based discovery *can and should* proceed with respect to Defendants Murry and Ussery, and other discovery related to the Rule 65 request for preliminary injunctive relief should also be allowed to continue.

While qualified immunity may be asserted as an affirmative defense, where plaintiff's allegations state a claim for a violation of clearly established law, a defendant pleading qualified immunity is not entitled to dismissal before the commencement of discovery.  *See Mitchell v. Forsyth*, 472 U. S. 511, 524-525, 105 S. Ct. 2806, 86 L.Ed.2d 411 (1985); *Lion Boulos v.* Wilson, 834 F.2d 504, 507 (5th Cir. 1987).  Additionally, "qualified immunity does not shield government officials from all discovery, but only from discovery which is either avoidable or overly broad." *See Lion Boulos*, 834 F.2d. at 507.

Contrary to the Defendants' assertion, the jurisdictional and immunity defenses raised by the Defendants will not result in the dismissal of the case and the need for consideration of the pending preliminary injunction motion will not be negated.   The qualified immunity defense is only raised by Defendants Murry and Ussery, in their individual capacities.  "The rationale that supports qualified immunity from suit in an individual capacity case is absent in official capacity

cases, and, as is well settled, qualified immunity does not apply to official capacity claims." *See Jacobs v. W. Feliciana Sheriff's Department*, 228 F.3d 388, 392 (5ᵗʰ Cir. 2000); *Zarnow v. City of Wichita Falls, Texas*, 500 F.3d 401, 406-7 (5th Cir. 2007) (denying interlocutory appeal jurisdiction regarding official capacity claims because "officers in their official capacity, however, have no comparable right to be free from suit.") As such, even if Defendants Murry and Ussery's qualified immunity motions were granted, the official capacity claims against both individuals as well as the claims against the other defendants, would still proceed, and the Motion for Preliminary Injunction would still need to be decided by the Court.

## **REQUESTED DISCOVERY**

The Q & A on campus sexual misconduct was issued by the Department of Education contains specific guidance for universities with respect to Title IX grievance procedures and investigations. [Doc. 7] In the guidance, the U.S. Department of Education provides that, it is a school's obligation with regard to a complaint of sexual misconduct to adopt and publish grievance procedures that provide for prompt and equitable resolution of complaints. The Office of Civil Rights has identified elements to be considered in evaluating whether a school's grievance procedures are prompt and equitable. These include:

> (1) provides notice of the school's grievance procedures, including how to file a complaint, to students and employees;
>
> (2) applies the grievance procedures to complaints filed by students or on their behalf alleging sexual misconduct carried out by employees, other students or third parties;
>
> (3) ensures and adequate, reliable and impartial investigation of the complaint, including the opportunity to present witnesses and other evidence;
>
> (4) designates and follows a reasonably prompt time frame for major stages of the complaint process;

(5) notifies the parties of the outcome of the complaint; and

(6) provides assurance that the school will take steps to prevent reoccurrence of sexual misconduct and to remedy its discriminatory effects, as appropriate.

[Doc. 7]

Significantly, the Q & A on campus sexual misconduct addresses what constitutes an equitable investigation. *Id.* It states that in every investigation conducted under a school's grievance procedures, the burden is on the school and not on the parties to gather sufficient evidence to reach a fair and impartial determination as to whether sexual misconduct occurred. *Id.* A person who is free of any actual or reasonably perceived conflicts of interest or bias for or against any party must be in charge of the investigation on behalf of the school. *Id.* Schools are required to ensure that institutional interests do not interfere with the impartiality of the investigation. *Id.* An equitable investigation of a Title IX complaint requires a trained investigator to analyze and document the available evidence to support reliable decisions, objectively evaluate the credibility of the parties and witnesses, and to synthesize the available evidence--including both inculpatory and exculpatory evidence--and to consider the unique and complex circumstances of each case. Importantly, the guidance indicates that exculpatory evidence must be considered. *Id., citing 2001 Guidance* at (V)(A)(1) -(2); *See also* 34 C.F.R. § 668.46(L)(2)(ii).

The Q & A on campus sexual misconduct also provides that any rights or opportunities that a school makes available to one party during the investigation should also be made available to the other party on equal terms. *Id., citing 2001 Guidance* at X. A school may not restrict the ability of one party to discuss the investigation and restrict the ability of either party; to do so is, in the eyes of the Department of Education Office of Civil Rights, likely to deprive the parties of their ability to obtain and present evidence or otherwise defend their interest and is likely to be

considered inequitable.  *Id.*  Once a school decides to open an investigation that could lead to disciplinary action, any investigation should result in a written report that summarizes the relevant exculpatory and inculpatory evidence.  *Id.*  The reporting and responding parties and officials must have timely and equal access to any information that will be used during any informal or formal disciplinary meetings and hearing.  *Id.*  The directive informs that if exculpatory evidence is not considered, the investigation is likely inequitable.  *Id.*  Additionally, if a gag order is issued to only one party, the investigation is likely inequitable.  *Id.*  Furthermore, denying a party timely and equal access to information indicates that the investigation is likely inequitable.  *Id.*  Furthermore, The Q & A directs that the investigator or separate decisionmaker must make findings of fact and conclusions as to whether the facts supporting a finding of responsibility for a violation of the school's sexual misconduct policy exist.  *Id.*  If disciplinary sanctions are imposed, they must be made as a proportionate response to the alleged violation.  *See 34 C.F.R. §106.8 (b); 2001 Guidance at (VII)(A).*

It is the Plaintiff's position that although the Defendants knew the requirements of Title IX, were aware of the Department of Education's guidelines and knew that the Plaintiff was entitled to certain procedural and substantive due process rights pursuant to the Fourteenth Amendment of the U.S. Constitution, these laws and guidelines were deliberately not followed. The University of Mississippi has, in essence, allowed two different sets of policies and practices to exist with respect to Title IX investigations.  The written policies of the University indicate an accused student will be presumed innocent, but in practice and custom where there are situations involving he-said/she-said disputes the female is presumed to be the victim and the male is presumed responsible for misconduct.

In support of his claims against the Defendants, within his Complaint and his Motion for Preliminary Injunction, the Plaintiff has set forth information relating to the Title IX investigation and related disciplinary proceedings about which he has firsthand knowledge, as well as information regarding the limitations put on him during the University's investigation, how his participation at the disciplinary hearing was limited and the various rulings that were made. He has also set forth allegations relating to the disparities between how he and a female student were treated, information regarding other male students who have had similar experiences with Ussery and Murry, and information shared during the hearing or through others. However, the Plaintiff cannot get access to information which is in the sole possession of the Defendants without some limited discovery.

Accordingly, the Plaintiff requests permission to engage in tailored and expedited preliminary discovery in order to obtain information that the Defendants have not voluntarily provided during the course of the University proceedings, and to conduct limited and tailored depositions of a 30(b)(6) representative of the University and/or State of Mississippi, Honey Ussery, Tracy Murry and Jane Roe. The discovery requested would be limited to the categories of information detailed below:

(1.)     The Plaintiff has asserted that while the University and Ussery use the terms "victim"/complainant they are referring to female complainants and that the University has a distinct pattern, practice and custom of considering female complainants to be victims before an investigation is concluded. The Defendants, in turn, argue that these are gender neutral terms and no gender bias exists at the University. **The Plaintiff seeks discovery to ascertain the number of Title IX cases the University has had in the last five years that involve allegations of student on student sexual misconduct, identification of the gender of the complainants and**

respondents in these cases and the findings in each case.  (At the preliminary stage, the Plaintiff is not seeking student names or information.)

(2.)    **The Plaintiff further seeks discovery regarding any other allegations of gender bias raised against Murry and /or Ussery and the actions taken by the University in response to these allegations.**    At this point, the Plaintiff is aware that allegations of gender bias and a denial of due process with respect to disciplinary proceedings have been raised by at least two other men who have cases pending in the U.S. District Court for the Northern District of Mississippi and the U.S. District Court for the Southern District of Mississippi.

(3.)    **Discovery regarding the timing and extent of the original investigatory findings, the complete reasons why the Appellate Consideration Board reversed the initial findings and ordered a new hearing, the cause for Murry's extended delay in communicating this finding to the Plaintiff and the scope of "summarization" or modification of the Appellate Consideration Board's finding as to potential bias and the exclusion of exculpatory evidence by Murry before it was communicated to the Plaintiff.**  In his Complaint, Plaintiff has pled details regarding the findings by the Appellate Consideration Board as communicated to him by Murry, as well as details regarding the delay in communication of this finding by Murry and the impact the delay had on him.  As detailed in the Plaintiff's Affidavit attached as Exhibit "A" to his Motion for Preliminary Injunction [Doc.7],  the initial Appellate Consideration Board's found Ussery had presented materials to the Judicial Council in a biased manner and that there was a possible failure to consider exculpatory evidence. This information was communicated to the Plaintiff three weeks after the determination was made and the Plaintiff was never provided the actual findings and communication from the Appellate Consideration Board. Rather, Murry told the Plaintiff he would need to review the Board's opinion further before he could share it with him.

Murry never provided the Plaintiff with any written finding from the Board, but only a separately prepared letter he had created which summarized the findings.    The Department of Education Title IX guidelines consider discussion of inculpatory and exculpatory evidence that was considered by an educational institution in making an investigatory determination to be one of the critical elements of a fair investigation.

(4.)    **Discovery to clarify the basis for Ussery's refusal and the communications between Ussery, Murry and the Appellate Consideration Board regarding the Plaintiff's Motion for Preliminary Injunction and supporting Memorandum.**  After the finding by the Appellate Consideration Board, Ussery refused to consider additional information or modify her report.    She informed the Plaintiff of her refusal. While not considered or addressed in the University's investigation, the supplemental items were provided to the panel in a separate folder, at Doe's insistence.

(5.)    **Discovery to inquire about Ussery's failure to include certain exculpatory evidence in her report, the reasons therefore and the actions or inactions of Murry and the University to address these deficiencies**. As set forth in the Plaintiff's Complaint, some of the known misrepresentations and exculpatory evidence not addressed by Ussery included:

      a.      The report submitted by Ussery did not advise of Jane Roe's statement that she initially did not believe she was raped but her friends told her to report the situation;

      b.      Ussery's report indicated that Jane Roe told John Doe his touches felt good, however, Doe had reported this was said by Roe not just once, but on multiple occasions;

c.      Ussery's report erroneously stated that John Doe reported Jane Roe "adjusted his pants." However, Doe reported that Roe pulled down his pants, again evidencing her intent to proceed with consensual relations;

d.      Critically, Ussery's report failed to accurately reflect John Doe's statement that Jane Roe had affirmatively stated that she wanted to have sex on the evening of March 30, 2017;

e.      The report submitted by Defendant Ussery did not reference the fact that Jane Roe had asked an officer to delay contacting John Doe about her allegations until after a sorority party because she thought that she would see John Doe at that party;

f.      The report submitted by Defendant Ussery did not mention the fact that Jane Roe indicated on multiple occasions that she did not want to pursue charges against John Doe and that she executed a non-prosecution form;

g.      The report submitted by Defendant Ussery did not address the fact that Jane Roe had told University Police in April, 2017, she felt that she had received the closure she needed;

h.      Defendant Ussery did not address the forensic police evidence obtained and maintained by the University of Mississippi police department in her report, including the physical evidence procured from Jane Roe;

i.      Defendant Ussery did not interview the dormitory administrator who knocked on John Doe's room and escorted Doe and Roe downstairs on the evening of March 30, 2017;

      j.     Defendant Ussery did not interview the security personnel who was in the lobby of John Doe's dormitory on the evening of March 30, 2017, nor address his presence in her report;

      k.     Upon information and belief, Defendant Ussery inaccurately paraphrased and summarized certain witness statements.

      l.     A Forensic Medical Report/ Sexual Assault Examination of Jane Roe that was conducted on March 31, 2017 revealed (a) no findings of any injury to her vagina or neck and (b) no physical injury to Roe. This report was provided to the University but went unaddressed in Defendant Ussery's report. It had to be presented to the University Hearing Council separately from the original case file.

      m.     In addition, Defendant Ussery would not consider the expert report of Dr. Kris Sperry or a polygraph examination and associated report presented by John Doe. These matters also had to be presented to the University Hearing Council separately from the original case file.

[Doc. 26]

    (6.)   **Discovery directed at determining when Ussery learned of the Appellate Consideration Board's ruling and whether or not the ruling had been communicated to Ussery prior to the time she made her comments to the witness.** As set forth in the Complaint and supported by an affidavit submitted with the Plaintiff's Motion for Preliminary Injunction, during the ongoing proceedings, Ussery told a witness that she didn't have any responsibility to the Plaintiff. This was after the Plaintiff's appeal was granted and there had been finding of bias in Ussery's presentation to the panel.

(7.)     Despite a finding of bias in the presentation of information to the University Judicial Council by Ussery and the Appellate Consideration Board's stated inability to ascertain that Ussery considered exculpatory evidence during the course of the investigation, when the matter was remanded Defendant Murry allowed Ussery to re-submit her original report without modification. **Plaintiff seeks discovery regarding the communications between Ussery, Murry and any other University personnel about the procedures to be followed in order to ascertain compliance with policy and /or instructions of the Appellate Consideration Board.**

(8.)     During the hearing on remand, the Plaintiff's accuser informed the Judicial Council that a prior finding of guilty had already been issued against the Plaintiff and that he had been expelled.  When the Plaintiff objected, Murry counseled the Judicial Council and the Council announced they would be taking no action.   In addition, when the Council ultimately met to consider their ruling and the disciplinary sanctions to be issued against the Plaintiff, Murry met with them behind closed doors for an extended period. The panel members demeanor towards the Plaintiff noticeably changed after Murry talked with them.  Upon information and belief, Murry improperly interfaced with the panel**.     The Plaintiff seeks discovery to ascertain the information and instructions communicated to the Judicial Council by Murry before, during and after the disciplinary hearings involving the Plaintiff.**

(9.)     While the purported guarantee provided by the University's "University Conduct Process" provides that "[a]s the parties present information for the panel's consideration, members of the hearing panel (including the chair), the respondent, and the complainant, when applicable, may ask questions of the parties and other witnesses concerning the information presented or other information pertinent to the charge" – however, the Plaintiff was not allowed to subpoena witnesses whose summarized statements were presented by Ussery so as to be able to question

them at the hearing, nor was the Plaintiff personally allowed ask any questions of the witnesses who voluntarily appeared.  In addition, Plaintiff's counsel could not ask questions of the witnesses who voluntarily appeared.   The University's procedures require a respondent to submit any questions he might have for consideration and approval by the chairperson.  At the first hearing, only one of the seventeen questions the Plaintiff submitted to the Council was asked.  Counsel for the Plaintiff is aware of another 2017 proceeding in which a different male student was not allowed to subpoena or question any witnesses.  **Plaintiff seeks permission to conduct discovery relating to this procedure and how it is applied in practice so as to support his due process claims.**

(10.)    In 2017, the Secretary of Education publicly expressed her belief that the due process rights of many accused students had been denied by Title IX procedures similar to those applied at the University of Mississippi, such that thoughtful consideration should be made before applying the preponderance of the evidence standard in the course of an investigation. Some or all of the defendants knew of the announcements and concerns of due process violations raised by the Department of Education prior to the Plaintiff's expulsion, as the Plaintiff presented this information directly to Murry and the University.   Despite this, the University issued a statement indicating it would not be changing its policies.   **Plaintiff seeks preliminary discovery to identify the person or persons involved in the decision to ignore due process concerns, as well as discovery tailored to ascertaining whether there was discussion of the proceedings against the Plaintiff and whether he had received fair process.**

(11.)    As set forth in the Complaint and within two of the Affidavits submitted in support of the Plaintiff's Motion for Preliminary Injunction, complaints of bias by Ussery and threats against the Plaintiff were presented to the University, Murry and Ussery.   **The Plaintiff seeks discovery to ascertain whether the University has investigated the complaints of bias in the**

investigations conducted by Ussery and/or the threats made against the Plaintiff and institutional concerns in the Title IX program as implemented at the University of Mississippi.  Plaintiff also seeks discovery related to the Chancellor's role in instituting or denying policy changes at the University.

(12.)   The training materials that are generally provided to Judicial Council members and/or members of the Appellate Consideration Board, provide an incorrect definition of the "preponderance of evidence" standard of proof.   In addition, the training materials frequently use the term "victim" for a complainant and advise that when complainants give contradictory statements it should be ignored.   Accordingly, **Plaintiff seeks discovery regarding the training provided to members of the Judicial Council and the instructions of Murry and/or Ussery in relation to this training, including information regarding presumptions about who is a victim and the significance of contradictory testimony by a complainant**.

(13.)   **Plaintiff seeks permission to inquire as to why Ussery did not consider certain exculpatory evidence or interview several other known witnesses who are believed to have more detailed knowledge of the night in issue than those named by Jane Roe, but chose to direct her interviews to those close friends of Jane Roe's who were not present at the dorm that evening.**  Specifically, although John Doe advised Ussery that there was another witness in the room on the night in issue, this woman was not interviewed.  In addition, although John Doe informed Ussery that the dorm administrator had to knock on the door and tell Jane Roe it was time to leave, he was not interviewed.  Similarly, the security personnel in the lobby of the Plaintiff's dorm who were present when John Doe signed Jane Roe out for the night were also not interviewed. (Ussery also failed to request the security video which she had been told showed the couple hugging goodnight. This has now been erased by the University.)

(14.) **Plaintiff requests discovery to ask about Ussery's specific instructions to Jane Roe and witnesses during the course of the investigation and appeal period, including any gag orders, communications with professors and advisements regarding possibly retaliatory actions or threats of physical violence.** The Plaintiff had been given instructions not to communicate with anyone about the investigation or allegations raised against him and that he could not inform his professors what was going on or why he was not allowed to attend class. Likewise, one of the Plaintiff's witnesses was told she could not talk to anyone and was pressured by Ussery not to support the Plaintiff. However, Jane Roe and her friends openly discussed the investigation around campus and threats of physical violence were made against John Doe without the University or Ussery taking any action or counseling the students engaged in such conduct.

(15.) **Plaintiff requests discovery related to Murry and Ussery's roles with respect to training, prosecution of cases, investigations, their interactions with the Judicial Council in the Plaintiff's case and their involvement with the Judicial Council's deliberative process.**

(16.) **Plaintiff seeks discovery related to the communications between Ussery and Jane Roe. How Roe was treated during the course of the investigation directly relates to the gender disparities in issue.**

A stay pending resolution of a motion to dismiss "is the exception rather than the rule. As one court observed, 'had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect.' " *Glazer's Wholesale Drug Co. v. Klein Foods, Inc.*, No. 3-08-CV-774-L, 2008 WL 2930482, at *1 (N.D. Tex. July 23, 2008) (citations and brackets omitted); *see also Nken v. Holder*, 556 U.S. 418, 427 (2009) ("A stay is an intrusion into the ordinary processes of administration and judicial

review, and accordingly is not a matter of right, even if irreparable injury might otherwise result....").

For the reasons stated above, the Plaintiff respectfully requests limited, expedited discovery that is narrowly tailored to the issues set forth above. These issues have a direct relation to the preliminary injunction motion before the Court, as well as the defense of qualified immunity raised by Defendants Murry and Ussery. The Plaintiff requests a 60- day period within which to take the 30(b)(6) deposition of the University and/or State of Mississippi, and depositions of Honey Ussery, Tracy Murry and Jane Roe, on the limited matters set forth above, and potentially two to three others, conditioned upon the sufficiency of the initial information obtained. In addition, the Plaintiff requests sixty (60) days for the parties to engage in written discovery, limited to 15 interrogatories and 15 requests for production per side in accordance with Fed. R. Civ. P. 30(b)(5) and 34, to be conducted in advance of the 30(b)(6) deposition and/or depositions of Murry and Ussery.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff respectfully requests this Court GRANT his Motion for limited, expedited discovery in its entirety. For the reasons stated above, the Plaintiff respectfully requests limited, expedited discovery that is narrowly tailored to the issues set forth above. These issues have a direct relation to the preliminary injunction motion before the Court, as well as the defense of qualified immunity raised by Defendants Murry and Ussery. The Plaintiff requests a 60- day period within which to conduct this expedited discovery.

RESPECTFULLY SUBMITTED, this, the 17th day of May, 2018.

Respectfully submitted,

**JOHN DOE**

By: */s/ Michelle T. High*
        Michelle T. High

J. Lawson Hester (MSB # 2394)
lhester@pbhfirm.com
Michelle T. High (MSB #100663)
mhigh@pbhfirm.com
Pettis, Barfield & Hester, P.A.
4450 Old Canton Road, Suite 210
Jackson, Mississippi 39211
P.O. Box 16089
Jackson, Mississippi 39236-6089
Telephone: 601-987-5300
Facsimile: 601-987-5353

## CERTIFICATE OF SERVICE

I, Michelle T. High hereby certify that I have this day filed the foregoing document electronically with the U.S. District Court, Southern District of Mississippi Clerk of Court's PACER/ECF system which gives electronic notice to the following:

J. Call Mayo, Jr.
cmayo@mayomallette.com
Paul B. Watkins, Jr.
pwatkins@mayomallette.com
J. Andrew Mauldin
dmauldin@mayomallette.com
Mayo Mallette PLLC
P.O. Box 1456
Oxford, Mississippi 38655
**COUNSEL FOR DEFENDANTS**


SO CERTIFIED, this the 17th day of May, 2018.


*/s/ Michelle T. High*
Michelle T. High