UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JOHN DOE                                                                    PLAINTIFF

V.                                                CIVIL ACTION NO. 3:16-CV-63-DPJ-FKB

THE UNIVERSITY OF MISSISSIPPI, ET AL.                                      DEFENDANTS

ORDER

Defendants in this sex-discrimination case ask the Court to dismiss Plaintiff John Doe's

Amended Complaint in its entirety.  As detailed below, Defendants' Motion to Dismiss [45] is

granted as to all claims against all Defendants other than the Title IX claims against the State

Defendants and a portion of the § 1983 procedural-due-process claim against Chancellor Vitter

in his official capacity.

I.        Facts and Procedural History

This case centers around a March 30, 2017 sexual encounter between Plaintiff John Doe

and Jane Roe, both undergraduate students at the University of Mississippi.  Doe and Roe agree

that they had sexual intercourse on March 30.  Doe maintains that the encounter was consensual,

but the following day, Roe told the University's Title IX office that Doe sexually assaulted her.

Despite initially deciding that she did not want to pursue charges, in late May 2017, Roe

filed a Title IX complaint against Doe.  Defendant Honey Ussery, the University's Title IX

Coordinator, conducted an investigation and submitted a report to Defendant Tracy Murry, the

Director of the University's Office of Conflict Resolution and Student Conduct.  Murry provided

Doe with written notice of the charges and scheduled a disciplinary hearing before a panel of the

University Judicial Council.

The Judicial Council held a hearing on Roe's complaint on August 24, 2017, and found Doe responsible. As punishment, the Judicial Council expelled Doe from the University. Doe appealed, and on October 11, 2017, the Appellate Consideration Board granted the appeal and remanded the case to the Judicial Council for reconsideration.

A different panel of the Judicial Council held a second hearing on Roe's complaint on November 17, 2017. At the conclusion of that hearing, the Judicial Council announced that it had found Doe responsible and sanctioned him with suspension through August 2018. Doe and Roe both appealed the decision, and on December 5, 2017, the Appellate Consideration Board changed the sanction levied from suspension to expulsion.

On January 26, 2018, Doe filed this lawsuit alleging discrimination claims under Title IX, due-process claims under 42 U.S.C. § 1983, and a state-law claim for breach of contract. He then filed a motion for preliminary injunction [7] and subsequently amended his complaint. The Amended Complaint [26] asserts claims against the State of Mississippi; the University of Mississippi; the State Institutions of Higher Learning ("IHL"); the Board of Trustees of the IHL; the Commissioner and all members of the Board of Trustees of the IHL in their official capacities; Jeffrey S. Vitter, in his official capacity as the Chancellor of the University of Mississippi; and Murry and Ussery, in their official and individual capacities. Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) and (6), and the matters raised have been fully briefed.

II.     Standards

Defendants raise Eleventh Amendment immunity as to some claims, thus questioning the Court's subject-matter jurisdiction under Rule 12(b)(1). *United States v. Tex. Tech. Univ.*, 171 F.3d 279, 285 n.9 (5th Cir. 1999). "The party seeking relief [in federal court] bears the burden of

establishing subject-matter jurisdiction." *Sawyer v. Wright*, 471 F. App'x 260, 261 (5th Cir.

2012). "Lack of subject matter jurisdiction may be found in any one of three instances:  (1) the

complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or

(3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Defendants also challenge the sufficiency of Doe's pleading under Rule 12(b)(6).  When

considering a motion under that rule, the "court accepts 'all well-pleaded facts as true, viewing

them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dall. Area Rapid*

*Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th

Cir. 1999) (per curiam)).  But "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To

overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief

that is plausible on its face." *Twombly*, 550 U.S. at 570.  "Factual allegations must be enough to

raise a right to relief above the speculative level, on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted).

Generally, in considering a motion under Rule 12(b)(6), the Court "must limit itself to the

contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean*

*Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  An exception to this rule exists for documents that

"are referred to in the plaintiff's complaint and are central to h[is] claim." *Id.* at 499.  Likewise,

the Court may consider public records. *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995).

In this case, Defendants have submitted a number of documents in support of their motion to dismiss.  And, in his response, Doe incorporated additional documents he submitted in support of his motion for preliminary injunction.  The documents the parties submitted include various publications from the United States Department of Education, Ussery's investigative report, transcripts of the two hearings, and other documents generated as part of the University's handling of the Title IX complaint against Doe.  Some of these documents would be proper for the jurisdictional issues only.  Others can be considered under both Rule 12(b)(1) and 12(b)(6). The Court concludes that it can rule on the Rule 12(b)(6) motion without converting it under Rule 12(d).  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

III.    Analysis

A.    Eleventh Amendment Immunity

"The Eleventh Amendment grants a state immunity from suit in federal court by citizens of other States and by its own citizens . . . ." *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 616 (2002) (citation omitted).  Immunity also extends to state agencies that are considered "arms of the state." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989).  And "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Id.* at 71.  Defendants contend that the Eleventh Amendment bars Doe's § 1983 and breach-of-contract claims against the State, the University, IHL, the IHL Board Members and Commissioner, the Chancellor, and Murry and Ussery in their official capacities.

     1.     Section 1983 Claims

Starting with the § 1983 claims, Doe seems to concede that "claims for monetary damages against the State defendants and official capacity defendants" are barred by the Eleventh Amendment.  Pl.'s Mem. [54] at 12.  Because he offers no defense of his § 1983 claims against the State, the University, IHL, or the Board of Trustees of the IHL, Defendants' motion is granted as to those claims.  *See Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 186 (5th Cir. 1986) ("The Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought.").

Doe insists, however, that he has asserted appropriate claims for "declaratory and injunctive relief against the individual defendants named in their official capacities" that are "not prohibited by the Eleventh Amendment."  Pl.'s Mem. [54] at 12.  Doe thus invokes the *Ex parte Young* doctrine as to the § 1983 official-capacity claims against the Commissioner and members of the Board of Trustees of the IHL, the Chancellor, and Murry and Ussery.  209 U.S. 123 (1908).

In *Ex parte Young*, the Supreme Court "created an exception to Eleventh Amendment immunity for claims for prospective relief against state officials who have been sued in their official capacities."  *Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 320 (5th Cir. 2008).  For a state officer to face liability under *Ex parte Young*, that officer must have "some connection" to the requested relief.  *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014).  Thus, a defendant who "is not in a position to provide the requested relief" is not a proper party under the *Ex parte Young* doctrine.  *Fairley v. Stalder*, 294 F. App'x 805, 812 (5th Cir. 2008).

Defendants seem to acknowledge that Doe's "requests for reinstatement, expungement, and sealing" of his records qualify as appropriate prospective relief under *Ex parte Young*.

Defs.' Mem. [46] at 9; *see Nelson*, 535 F.3d at 324 ("[A] request for reinstatement is sufficient to bring a claim within the *Ex parte Young* exception to Eleventh Amendment immunity, as it is a claim for prospective relief designed to end a continuing violation of federal law."). But Defendants say that "the only state official with any connection to such claim for relief is the Chancellor of the University." Defs.' Mem. [46] at 9. Doe does not counter this argument, which appears correct. *See El-Bawab v. Jackson State Univ.*, No. 3:15-CV-733-DPJ-FKB, 2018 WL 543040, at *3 (S.D. Miss. Jan. 24, 2018) (finding former University president was "the only individual defendant who ever had authority to grant the prospective relief" plaintiff sought—"an immediate promotion to full professor").

Accordingly, Doe has not met his burden of establishing that the *Ex parte Young* exception to Eleventh Amendment immunity applies as to the § 1983 claims against Defendants C.D. Smith, Jr., Shane Hooper, Tom Duff, Dr. Ford Dye, Ann H. Lamar, Dr. Alfred E. McNair, Jr., Chip Morgan, Hal Parker, Alan W. Perry, Christy Pickering, Dr. Doug W. Rouse, Dr. J. Walt Starr, and Glenn F. Boyce—the Commissioner and members of the Board of Trustees of IHL— or the official-capacity claims against Murry and Ussery. Those claims are dismissed for lack of subject-matter jurisdiction.[1] The *Ex parte Young* claim against Vitter will be addressed later in this Order.

### 2. Breach-of-Contract Claims

As to the breach-of-contract claim against the State and arms of the State, Doe is correct that Mississippi has "waive[d] its immunity from suit for a breach of contract when it enters into a contract." Pl.'s Mem. [54] at 33; *see Cig Contractors, Inc. v. Miss. State Bldg. Comm'n*, 399

---

[1] The Commissioner and members of the Board of Trustees of IHL were named in their official capacities only.

6

So. 2d 1352, 1355 (Miss. 1981).  But a state's "general waiver of sovereign immunity . . . does not constitute a waiver by the state of its constitutional immunity under the Eleventh Amendment from suit in federal court."  *Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 150 (1981).  So "[w]hile Mississippi has waived its state sovereign immunity to suit in state court for breach of contract, there is no unequivocal statement of its intent to also waive its Eleventh Amendment immunity to suit in federal court."  *Moore v. Univ. of Miss. Med. Ctr.*, 719 F. App'x 381, 387–88 (5th Cir. 2018).  Doe's breach-of-contract claims against the State Defendants are dismissed without prejudice for lack of subject-matter jurisdiction.

      B.      Title IX Claims

Title IX provides:  "No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Defendants primarily assert three arguments for dismissing the Title IX claims:  (1) the University is the only defendant properly characterized as an education program or activity that receives federal funding and is therefore the only defendant potentially liable under Title IX; (2) monetary damages are not available under Title IX; and (3) the Amended Complaint otherwise fails to state a claim under Title IX.  The Court concludes that Doe's Title IX claim withstands Defendants' arguments.

The Supreme Court has held that Title IX is enforceable through an implied private cause of action.  *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979).  And as Spending Clause legislation, "Title IX generates liability when the recipient of federal funds agrees to assume liability."  *Pederson v. La. State Univ.*, 213 F.3d 858, 876 (5th Cir. 2000).  "For State and local governments, only the department or agency which receives the aid is covered.  Where an entity

of state or local government receives federal aid and distributes it to another department or agency, both entities are covered." *Alegria v. Tex.*, No. G-06-0212, 2007 WL 2688446, at *13 (S.D. Tex. Sept. 11, 2007), *aff'd sub nom. Alegria v. Williams*, 314 F. App'x 687 (5th Cir. 2009). Finally, a party asserting claims under Title IX may seek monetary damages. *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 73 (1992); *see also Fryberger v. Univ. of Ark.*, 889 F.3d 471, 477 (8th Cir. 2018) (holding that monetary damages are available under Title IX).[2]

Many courts have allowed Title IX claims in the context of university disciplinary proceedings, starting with the Second Circuit's decision in *Yusuf v. Vassar College*, 35 F.3d 709, 714–15 (2d Cir. 1994). Defendants say, however, that "the Fifth Circuit has declined to do so" and therefore this Court should likewise "decline to adopt such theories of liability." Defs.' Mem. [46] at 12–13 (citation omitted). For starters, Defendants cite no Fifth Circuit cases that actually "declined to adopt" this theory. *Id.* And while the Fifth Circuit may not have directly examined the question, it has reviewed several Title IX claims related to university disciplinary proceedings. *See Arceneaux v. Assumption Par. Sch. Bd.*, No. 17-30269, 2018 WL 2271077, at *3 (5th Cir. May 17, 2018); *Plummer v. Univ. of Houston*, 860 F.3d 767 (5th Cir. 2017).

So too, district courts within the Fifth Circuit have consistently addressed this type of Title IX claim. *See, e.g.*, *Klocke v. Univ. of Tex. at Arlington*, No. 4:17-CV-285-A, 2018 WL

_____

[2] While Defendants say only the University is a funding recipient subject to Title IX, Doe counters that the State Defendants—the State of Mississippi, IHL and the Commissioner and members of its Board of Trustees, and the University—are all subject to liability under Title IX. Without converting the Rule 12(b)(6) motion into a Rule 56 motion, the Court cannot definitively say which State Defendants face Title IX liability. But the claim at least seems plausible, so the Court will let the Title IX claim go forward against the Defendants Doe says Title IX covers: the State, the University, IHL, and the Commissioner and members of the Board of Trustees of IHL.

2744972, at *5 (N.D. Tex. June 7, 2018).  Based on this history and the text of Title IX itself, the statute applies in this context.

As for its standards, the Second Circuit developed "two general theories" under which "a university can face Title IX liability for imposing discipline when gender is a motivating factor": the erroneous-outcome and selective-enforcement theories.  *Plummer*, 860 F.3d at 777.  Two additional theories have also developed:  the deliberate-indifference and archaic-assumptions theories.  *Doe v. Miami Univ.*, 882 F.3d 579, 589 (6th Cir. 2018).  Doe asserts claims under the erroneous-outcome and deliberate-indifference standards for Title IX liability.  Pl.'s Mem. [54] at 7.

Starting with erroneous outcome, Doe says "he was innocent of the charges that were presented and wrongfully found to have committed an offense in [the University's] disciplinary proceedings."  Pl.'s Mem. [54] at 7.  A "[p]laintiff[] who claim[s] that an erroneous outcome was reached must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding."  *Yusuf*, 35 F.3d at 715.  Additionally, the plaintiff must "allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding. . . .  Such allegations might include, inter alia, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender."  *Id.*  Viewed in the light most favorable to Doe, the Amended Complaint pleads a plausible claim that the sexual encounter was consensual and that the outcome was erroneous.[3]   Not surprisingly, Defendants do not directly

---

[3] The Court of course recognizes that the Amended Complaint tells just one side of this he-said/she-said story.  But under Rule 12(b)(6), it must accept Doe's account as true and draw all reasonable inferences in his favor.

challenge this point and instead focus on the second element—whether Doe has pleaded facts showing gender bias.

To begin, the Amended Complaint does include references to gender bias that are conclusory and therefore must be ignored under *Iqbal/Twombly*. *See, e.g.*, Am. Compl. [26] ¶¶ 6 ("[Defendants] failed to obtain and/or consider relevant exculpatory evidence during the course of the investigation and exhibited gender bias towards John Doe."), 167 ("The investigation was biased against Doe, based upon his gender . . . .").

That said, Doe also pleaded facts, most notably those addressing Defendant Ussery's conduct as Title IX Coordinator.  Under the University's Title IX policies, Ussery was charged with investigating the allegation and "compil[ing] *all evidence*, including the testimony of various witnesses, into a report."  Sexual Misconduct Policy [7-17] at 8 (emphasis added).  Yet the Amended Complaint catalogs exculpatory evidence Ussery excluded:

    a.  The report submitted by Ussery did not advise of Jane Roe's statement that she initially did not believe she was raped but her friends told her to report the situation;

    b.  Ussery's report indicated that Jane Roe told John Doe his touches felt good, however, Doe had reported this was said by Roe not just once, but on multiple occasions;

    c.  Ussery's report erroneously stated that John Doe reported Jane Roe "adjusted his pants."  However, Doe reported that Roe pulled down his pants, again evidencing her intent to proceed with consensual relations;

    d.  Critically, Ussery's report failed to accurately reflect John Doe's statement that Jane Roe had affirmatively stated that she wanted to have sex on the evening of March 30, 2017;

    e.  The report submitted by Defendant Ussery did not reference the fact that Jane Roe had asked an officer to delay contacting John Doe about her allegations until after a sorority party because she thought that she would see John Doe at that party;

f.  The report submitted by Defendant Ussery did not mention the fact that Jane Roe indicated on multiple occasions that she did not want to pursue charges against John Doe and that she executed a non-prosecution form;

g.  The report submitted by Defendant Ussery did not address the fact that Jane Roe had told University Police in April, 2017, she felt that she had received the closure she needed;

h.  Defendant Ussery did not address the forensic police evidence obtained and maintained by the University of Mississippi police department in her report, including the physical evidence procured from Jane Roe;

i.  Defendant Ussery did not interview the dormitory administrator who knocked on John Doe's room and escorted Doe and Roe downstairs on the evening of March 30, 2017;

j.  Defendant Ussery did not interview the security personnel who was in the lobby of John Doe's dormitory on the evening of March 30, 2017, nor address his presence in her report;

k.  Upon information and belief, Defendant Ussery inaccurately paraphrased and summarized certain witness statements.

Am. Compl. [26] ¶ 70.

Similarly, the Amended Complaint includes other statements that might suggest Ussery exhibited gender bias.  For example, Doe avers that Ussery "refused to consider the additional exculpatory evidence that John Doe submitted to her."  *Id.* ¶ 86.  That evidence included a "Forensic Medical Report/ Sexual Assault Examination of Jane Roe that was conducted on March 31, 2017 [and] revealed (a) no findings of any injury to her vagina or neck and (b) no physical injury to Roe."  *Id.* ¶ 89.  The report also excluded a polygraph test Doe passed.  *Id.* ¶ 90.

In addition to these omissions, the Amended Complaint also alleges that Ussery's statements demonstrate bias.  For example, Doe's date to the fraternity formal testified that

during her first interview with Defendant Ussery, Ussery told her not to inform Doe that she had been contacted and to "forget about" Doe and to "move on". When they spoke in September 2017, Ussery informed the student that Jane Roe was a victim and suggested supporting Doe would be considered retaliation and

> could get her in trouble.  This travesty was made even worse when the student
> questioned Ussery about her apparent bias, and Ussery advised that Doe was not
> Ussery's responsibility and that she had no obligations to him.

*Id.* ¶ 110.  There are also additional factual allegations regarding Ussery's policy-making

responsibilities and her training materials that might suggest bias.  *See, e.g.*, *id.* ¶¶ 141, 142, 145.

Finally, Ussery's report was submitted to the Judicial Council panel that heard Doe's case.

Viewed in the light most favorable to Doe, the Amended Complaint states a plausible

claim that Ussery breached her duty to report "all evidence," conducted a biased investigation,

and otherwise treated Roe more favorably than Doe.  Sexual Misconduct Policy [7-17] at 8.  The

question is whether this conduct evidences gender bias in the outcome.  Defendants say it does

not and cite a number of cases from across the country suggesting that such conduct merely

reflects a pro-victim bias rather than gender bias.  *See, e.g.*, *Doe v. Univ. of Colo., Boulder*, 255

F. Supp. 3d 1064, 1074 (D. Colo. 2017).  Unfortunately, Doe ignored that precedent and failed to

offer any relevant legal authority of his own.

While Defendants' arguments might ultimately prevail at the Rule 56 stage, the Court is

not willing to say there is no plausible claim.  Going back to the basics, Doe must "nudge[ his]

claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 547.  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

*reasonable inference* that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

678 (emphasis added).  This plausibility standard "does not impose a probability requirement at

the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery

will reveal evidence of" the claim.  *Twombly*, 550 U.S. at 556 (quoted in *In re S. Scrap Material

Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008)).

Here, there is certainly evidence of disparate treatment between Roe and Doe along with

statements from Ussery suggesting bias that could have influenced the unfavorable outcome.

Given the totality of the factual averments, Doe has pleaded a plausible claim and should be

afforded the opportunity to conduct discovery. *Id.* And having found that the claim survives

under at least one recognized theory, the Court need not address the deliberate-indifference

theory, though there are factual averments to support it.[4]

      C.      Section 1983 Claims for Injunctive Relief against Chancellor Vitter

Doe pleaded § 1983 claims against Chancellor Vitter under the *Ex parte Young* doctrine

based on Fourteenth Amendment substantive and procedural due-process rights. And while he

mentions both substantive and procedural due process in his response to Defendants' motion, he

never addresses the legal test that applies to a substantive-due-process claim. *See* Pl.'s Mem.

[54] at 16. The Court deems the substantive-due-process claim abandoned. *See Black v. N.*

*Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[The] failure to pursue this claim

beyond [the] complaint constitute[s] abandonment.").

Turning to procedural due process, the concept "imposes constraints on governmental

decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the

Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S.

319, 332 (1976). "[D]ue process requires notice and some opportunity for hearing before a

student at a tax-supported college is expelled for misconduct." *Dixon v. Ala. State Bd. of Educ.*,

294 F.2d 150, 158 (5th Cir. 1961).

---

    [4] Even if Doe had failed to state a claim, "a plaintiff's failure to meet the specific
pleading requirements should not automatically or inflexibly result in dismissal of the complaint
with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (citation
omitted). "Although a court may dismiss the claim, it should not do so without granting leave to
amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity
after being afforded repeated opportunities to do so." *Id.* Here, Doe would have been given that
opportunity.

In *Plummer*, the Fifth Circuit examined whether two students received due process during a university disciplinary proceeding regarding alleged sexual misconduct.  860 F.3d at 773.  The Fifth Circuit noted that "[a] university is not a court of law, and it is neither practical nor desirable it be one."  *Id.* (quoting *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 n.1 (6th Cir. 2005)).  It then applied *Mathews*:

> Generally, the amount of process due in university disciplinary proceedings is based on a sliding scale that considers three factors:  (a) the student's interests that will be affected; (b) the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (c) the university's interests, including the burden that additional procedures would entail.

*Id.* (citing *Mathews*, 424 U.S. at 335).  These are the *Mathews* factors.

As in *Plummer*, "the first and third *Mathews* factors are easily identified" in this case.  *Id.* "On the one hand, [Doe] ha[s] a liberty interest in [his] higher education [and] [t]he sanctions imposed by the University could have a 'substantial lasting impact on [his] personal li[f]e[], educational and employment opportunities, and reputation[] in the community.'" *Id.* (quoting *Doe v. Cummins*, 662 F. App'x 437, 446 (6th Cir. 2016)) (additional citations omitted).  "On the other hand, the University has a strong interest in the educational process, including maintaining a safe learning environment for all its students, while preserving its limited administrative resources." *Id.*  So Doe's due-process claim turns on "the second *Mathews* factor—the risk of erroneously depriving [his] interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Id.* at 774.

In response to Defendants' motion and in his memorandum in support of his motion for preliminary injunction, Doe highlights nine procedural issues in the handling of his disciplinary hearing that he claims deprived him of due process.

(1)  Doe asserts that "[d]ue process imposes a duty upon the Defendants to disclose exculpatory material and favorable evidence to a defendant."  Pl.'s Mem.

14

[54] at 16 (citing *Manning v. State*, 884 So. 2d 717 (Miss. 2004) (discussing rule articulated in *Brady v. Maryland*, 373 U.S. 83 (1963))).

(2) He says "[t]he use of the 'preponderance of the evidence' standard as the threshold legal standard for an adjudication of 'Responsible' or guilty under the totality of the circumstances presented is illegal and unconstitutional." *Id.* at 17.

(3) Doe contends that the manner in which the Judicial Council and Appellate Consideration Board members are trained violated his due-process rights.

(4) He complains that he was not permitted to directly cross-examine witnesses, instead having to submit questions to the Chair of the Judicial Council hearing panel, who did not ask all of Doe's submitted questions.

(5) He says that because he was not permitted to subpoena witnesses to appear at the hearings, "he was denied the ability . . . to cross-examine those persons giving statements to the University's Title IX Coordinator" who did not voluntarily appear at the hearing. *Id.* at 18.

(6) He complains that Defendants failed to suspend and reconvene his hearing when Roe made a highly prejudicial remark in her opening statement, depriving him of due process.

(7) He contends that Ussery "failed to conduct a thorough and impartial investigation of the allegations brought against [him.]" *Id.* at 22.

(8) Doe says the submission of Ussery's report to the Judicial Council panel in the second hearing "without modification" resulted in a violation of his procedural-due-process rights. Pl.'s Mem. [12] at 30.

(9) Doe asserts that the manner and timing of the selection of the hearing panel violated due process.

The Court will address each alleged procedural shortcoming separately.[5]

      1.    *Brady* Violation

Starting with *Brady*, Doe says he is entitled to production of exculpatory evidence. But

the only legal authority he cites is a criminal case. As Defendants point out, Doe was not

---

[5] The Court's discussion is limited to the procedures employed in the second hearing. To the extent Doe bases his claims on alleged procedural defects in the first hearing, "those defects were cured by the [Appellate Consideration Board's] decision to grant [his] appeal[], vacate the finding of responsibility, and provide . . . a second hearing." *Cummins*, 662 F. App'x at 447 (refusing to consider due-process challenges to first hearing following successful appeal).

charged with a crime and, under *Plummer*, "was not entitled to the full range of protections owed to a criminal defendant." Defs.' Mem. [46] at 25; *see Plummer*, 860 F.3d at 773; *see also Cummins*, 662 F. App'x at 446–51 (same). Doe fails to show a plausible claim. *See Tanyi v. Appalachian State Univ.*, No. 5:14-CV-170-RLV, 2015 WL 4478853, at *5 (W.D.N.C. July 22, 2015) (declining to extend *Brady* "to a university student conduct hearing").

Even if Doe did have the right to production of exculpatory evidence, there was no harm. Doe says security footage of his dormitory from the evening of March 30, 2017, along with information provided by the dormitory administrator who escorted Doe and Roe downstairs and security personnel in the lobby, would have shown that Roe was not upset when she left Doe's dormitory. But such evidence would have been consistent with what Roe told Ussery and testified to at the second hearing: she said she and Doe rode the dormitory elevator in silence, they hugged goodbye, and she did not begin crying until they parted ways. Ussery Report [28-1] at 2; *accord* Nov. 17, 2017 Tr. [28-5] at 10 ("I remember standing in silence in the elevator."); *id.* at 42 (explaining that after Doe signed her out of his dormitory, she "hugged him and . . . left"). So, even if *Brady* applies, the "probable value, if any," of the failure to disclose "would not have lessened the risk of an erroneous deprivation of [Doe's] interest or otherwise altered the outcome." *Plummer*, 860 F.3d at 774.

> 2. Lack of Subpoena Power

Doe cites no relevant legal authority suggesting that "the University had subpoena power or the authority to compel witnesses' appearances at a disciplinary hearing." *Doe v. W. New England Univ.*, 228 F. Supp. 3d 154, 179 (D. Mass. 2017); *see Doe v. Univ. of Ky.*, 860 F.3d 365, 370 (6th Cir. 2017) (describing campus-disciplinary proceedings as "lack[ing] some of the due process protections for a criminal trial, such as having an attorney cross-examine witnesses and

being able to subpoena witnesses").  He therefore fails to show Defendants violated his due-process rights in this regard.  *See Plummer*, 860 F.3d at 773 ("A university is not a court of law, and it is neither practical nor desirable it be one." (quoting *Flaim*, 418 F.3d at 635 n.1)).

           3.      Cross Examination

Doe also complains that he was not permitted to cross-examine witnesses or Roe directly, instead having to submit written questions to the Judicial Council panel.  And he says the panel did not ask all the questions he submitted, though he never identifies those questions.  Courts that have considered due-process challenges to limited cross-examination of witnesses—like the procedure used in Doe's hearing—have found due process satisfied.  *E.g.*, *Cummins*, 662 F. App'x at 448 (describing process where accused students "were allowed to submit only written questions to the . . . panel, the panel did not ask all the questions they submitted, and they were not allowed to submit follow-up questions" and concluding that due process "was satisfied in this case"); *Nash v. Auburn Univ.*, 812 F.2d 655, 664 (11th Cir. 1987) (finding no due-process violation when accused students "could pose questions of the accusing witnesses by directing their questions to the presiding board chancellor, who would then direct [their] questions to the witnesses").  Here, the Court does not even know which questions were excluded.  As pleaded, Doe had notice and a meaningful opportunity to pose questions to the witnesses who testified against him, so there was no due-process violation.[6]

---

[6] Doe relies on the Sixth Circuit's decision in *Doe v. University of Cincinnati*, where the court affirmed the district court's issuance of a preliminary injunction in a case where the accused student claimed his procedural-due-process rights were violated based on his inability to cross-examine his accuser.  872 F.3d 393 (6th Cir. 2017).  But in that case, the plaintiff's accuser did not attend the hearing, so he was unable to cross-examine her at all.  *Id.* at 397.  The Sixth Circuit found that the defendants' "failure to provide any form of confrontation of the accuser made the proceeding against [the plaintiff] fundamentally unfair."  *Id.* at 396.  Unlike the plaintiff in that case, Doe was able to confront his accuser in the proceedings before the Judicial Council.

4.      Late Disclosure of Panel Members

Doe next says—without supporting authority—that "[t]he selection of the second panel and failure to communicate the identity of the panel members until the final hours was contrary to the University's written policy and effectively denied John Doe adequate due process."  Pl.'s Mem. [12] at 25–26.  But "[t]he fact that a valid school policy . . . was not followed is not by itself significant in determining whether procedural due process has been violated."  *Vann ex rel. Vann v. Stewart*, 445 F. Supp. 2d 882, 888 (E.D. Tenn. 2006); *see also Brown v. Tex. A & M Univ.*, 804 F.2d 327, 335 (5th Cir. 1986) ("The failure of a state agency to comply with its internal regulations is insufficient as a matter of law to establish a violation of Due Process, because constitutional minima nevertheless may have been met.").[7]

5.      Failure to Declare Mistrial

Doe contends that the hearing panel's refusal to declare a mistrial when Roe alluded to the results of the prior hearing violated due process.  Roe testified before the second panel,

> this is my second time sitting here in this Chair participating in the hearing for the same case.  At the prior hearing [Doe] was found responsible and he was expelled from the University.  However, the appeal board agreed that the opening allegation had a biased tone and, therefore, we are having to repeat this all over again to reassure that this process is fair to both parties.

> During the past couple of months when he was expelled, I felt a sense of relief and finally my life seemed almost back to normal and I could walk around on campus, go to campus-related activities and even go to public places, such as the Union without having . . . to worry that I would bump into him or worr[y] about how I would react.

---

[7] Even in most criminal contexts, "it is within the discretion of the trial judge to withhold the list of prospective jurors until the day of the trial."  *United States v. Scallion*, 533 F.2d 903, 913–14 (5th Cir. 1976), *on reh'g*, 548 F.2d 1168 (5th Cir. 1977).  And by statute, advance disclosure is mandated only in treason and capital-offense cases.  18 U.S.C. § 3432.

Nov. 17, 2017 Tr. [28-5] at 11–12.  Doe objected, but the Judicial Council panel "decided to continue with the proceeding."  *Id.* at 18.

Citing a case involving a criminal jury trial, Doe asserts that the implication that he had been previously found responsible on Roe's complaint would have unfairly prejudiced the second hearing panel against him.  Pl.'s Mem. [12] at 30 (citing *United States v. Diaz*, 585 F.2d 116, 118 (5th Cir. 1978)).  But Doe's campus disciplinary hearing was not a criminal trial. Moreover, as Defendants point out, Doe himself introduced evidence indicating that there had been a prior hearing.  *See* Nov. 17, 2017 Tr. [28-5] at 61–62, 113.  And the fact that the case was before a second panel for a hearing would indicate the Appellate Consideration Board found some infirmity in the previous panel's decision, ultimately calling into question the original outcome.  Absent any relevant authority, the Court cannot say that Roe's statement in the second hearing denied Doe notice and a meaningful opportunity to respond.

6.      Ussery's Investigation, Report, and Training Materials

Doe's most significant due-process challenges flow from Ussery's investigation, report, and training materials.  Similar issues were addressed in *Plummer*.  There, the Fifth Circuit affirmed summary judgment against two plaintiffs who were disciplined for an alleged sexual assault despite evidence that the Title IX Coordinator had a conflict of interest and allegedly failed to properly investigate.  The court emphasized that under the second *Mathews* factor, the "amount of process constitutionally required in state university disciplinary proceedings will vary in accordance with the particular facts of each case."  *Id.* at 774 n.8.

Because the evidence of guilt in *Plummer* was overwhelming, the process was deemed sufficient as a matter of law.  As the Fifth Circuit explained, "In light of the graphic conduct depicted in the videos and photo—which the panels viewed for themselves before affirming the

19

University's findings—further procedural safeguards would not have lessened the risk of an

erroneous deprivation of [the plaintiffs'] interests or otherwise altered the outcome." *Id.* at 774

(citing *Mathews*, 424 U.S. at 335).   Accordingly, the plaintiffs failed to show that the issues

regarding the Title IX Coordinator "undermined the integrity of their proceedings." *Id.* at 776.

This case is different for two main reasons.  First, it is before the Court under Rule

12(b)(6), and Doe has not received the opportunity to conduct discovery.  Thus the issue is

plausibility rather than a lack of evidence.  Second, the facts—as pleaded and in the light most

favorable to Doe—do not suggest overwhelming proof that Doe sexually assaulted Roe, they

suggest just the opposite.  Thus, under *Plummer*, the amount of process due may be higher.

Turning then to Doe's arguments regarding Ussery, he says her investigation was biased

and flawed, that it resulted in an unfair report that was presented to the Judicial Council as the

official report of the Title IX Coordinator, and that the panel itself had been trained in a way that

prejudiced Doe's ability to be heard.  As to that training, Doe makes the following points:  (1)

the training material "advises that a 'lack of protest or resistance does not constitute consent, nor

does silence,'" (2) it "advise[s] the panel members that 'victims' sometimes withhold facts and

lie about details, question if they've truly been victimized, and 'lie about anything that casts

doubt on their account of the event,'" and (3) it explains that "when Complainants withhold

exculpatory details or lie to an investigator or the hearing panel, the lies should be considered a

side effect of an assault."  Pl.'s Mem. [12] at 26–27 (quoting Training Slides [7-16] at 10, 20,

21).

Taken as a whole, the Court concludes that Doe has stated a plausible claim.  This is a he-

said/she-said case, yet there seems to have been an assumption under Ussery's training materials

that an assault occurred.  As a result, there is a question whether the panel was trained to ignore

some of the alleged deficiencies in the investigation and official report the panel considered.  It is therefore plausible that the scales were tipped against Doe to such a degree that further procedural safeguards may have lessened the risk of an erroneous deprivation.  *Mathews*, 424 U.S. at 335.  These claims survive.

       7.       Standard of Proof

Finally, Doe disputes the standard of proof used by the Judicial Council.  The University's Sexual Misconduct Policy explains that "[t]he standard of proof for all cases involving sexual misconduct will be based upon the University's established standard of preponderance of the evidence."  Sexual Misconduct Policy [7-17] at 8; *see also* Adjudication Process Policy [7-18] at 2 ("Based on the preponderance of the information, the Hearing Board issues a finding of 'responsible' or 'not responsible.'").

 Doe says this preponderance standard violates due process; he raises a thorny issue.  *See Doe v. DiStefano*, No. 16-CV-1789-WJM-KLM, 2018 WL 2096347, at *6 (D. Colo. May 7, 2018) (noting unsettled nature of the law).  The only circuit that appears to have addressed the issue did so in an unpublished opinion that found no due-process violation when the university used the preponderance standard in a school disciplinary proceeding.  *See Cummins*, 662 F. App'x at 449.  But Judge Edith Jones made a forceful argument in her *Plummer* dissent that hearings on alleged sexual misconduct are quasi criminal and have long-lasting impacts on the accused.  She therefore advocated for a more burdensome standard of review, noting that "[e]levating the standard of proof to clear and convincing, a rung below the criminal burden, would maximize the accuracy of factfinding."  *Id.* at 782 & n.11 (Jones, J., dissenting).  The majority in *Plummer* avoided the issue, noting that it had not been preserved for appeal.  *Id.* at 772 n.5.  Given the developing nature of the law, and the fact that other portions of this claim

survive Defendants' Rule 12(b)(6) attack, the Court elects to carry this issue beyond the pleading stage.

### D.    Individual-Capacity Claims against Murry and Ussery

That leaves only the individual-capacity claims against Murry and Ussery for breach of contract and under § 1983 for violation of Doe's due-process rights.

#### 1.    Breach-of-Contract Claims

Doe alleges the existence of a contract between him and "[t]he University, IHL, through its Board of Trustees[,] and the State."  Am. Compl. [26] ¶ 202.  There is no allegation that he had a contractual relationship with Murry or Ussery in their individual capacities.  To the extent Doe attempted to plead a breach-of-contract claim against those Defendants, it is dismissed with prejudice.

#### 2.    Section 1983 Claims

Finally, Murry and Ussery assert qualified immunity as to Doe's individual-capacity § 1983 claims against them.

> An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.  And a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.  In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate.  In addition, [the Supreme Court] ha[s] repeatedly told courts . . . not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.

*Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (citations omitted).

Taking the allegations from the Amended Complaint as true, the Court would have serious concerns regarding the way these Defendants—especially Ussery—conducted their business.  But even assuming these Defendants violated Doe's constitutional rights, Doe does not

cite a single case that would put Ussery or Murry on notice that their conduct violated clearly established law.  Ussery and Murry are entitled to qualified immunity.

IV.    Conclusion

The Court has considered all arguments.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, Defendants' Motion to Dismiss [45] is granted as to all claims against all Defendants other than (1) the Title IX claims against the University; IHL; the Board of Trustees of the IHL; the State of Mississippi; and the Chancellor, IHL Commissioner, and IHL Board Members in their official capacities, and (2) the due-process claim against Chancellor Vitter under *Ex parte Young* based on the allegations related to the standard of proof and Ussery's investigation, report, and training materials.

Within 10 days of the entry of this Order, Defendants shall respond to Doe's Motion for Preliminary Injunction as to the remaining claims, and Doe's reply shall be filed within 7 days of Defendants' response.  Finally, the parties are directed to contact Courtroom Deputy Shone Powell to set the Motion for Preliminary Injunction for a hearing.

**SO ORDERED AND ADJUDGED** this the 24th day of July, 2018.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE