**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**JOHN DOE**                                                                                   **PLAINTIFF**

**V.**                                         **CIVIL ACTION NO.: 3:18CV63-DPJ-FKB**

**THE UNIVERSITY OF MISSISSIPPI;
ET AL.**                                                                                    **DEFENDANTS**

**REBUTTAL MEMORANDUM IN SUPPORT OF THE PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION**

In opposition to the Plaintiff's Motion for Preliminary Injunction, the Defendants assert that the Plaintiff does not have a substantial likelihood of success on the merits of his claim as he cannot prove the findings against him were erroneous, that there was any gender bias or that he denied procedural due process.  It is the Defendants' contention that Plaintiff was found responsible for violating the University's sexual misconduct policy's prohibition on sexual intercourse without "an affirmative agreement - through clear actions or words"  It appears to be the Defendants' argument that because there is a question as to whether or not the Plaintiff received a verbal, direct "yes" from Jane Roe during the course of sexual intercourse, the finding that he violated the University's policy cannot be established.  This argument completely ignores the evidence that was put before the investigator and before the hearing panel regarding Jane Roe's affirmative comments regarding enjoyment and her movements during the course of the sexual intercourse.  It also ignores the fact that if the hearing panel and Appellate Consideration Board had been provided non-biased training or exculpatory evidence relating to the Plaintiff the outcome could have been different. Likewise, it ignores the conflicting roles of Ussery and the inate structural deficiencies and bias in the program.

1

The Defendants argue that Ussery's role in the process is limited to investigating complaints and summarizing the relevant information in a report for others to ultimately make any factual determination. However, this ignores evidence to the contrary. Ussery plays a role in developing and /or presenting the training materials and has some input in the selection of the panel members and guidance they receive during the adjudicatory process. According to the Defendants, the training slides advise that complainants might leave out details or lie about anything that cast out on their version of events *because this is consistent with Ussery's experiences.* [Doc. 79, p. 20] Additionally, the training slides provided to the Appellate Consideration Board provide that, "If you are unsure about questions, you can check in with the Title IX Coordinator to see if it is relevant, or if asked and not in the report." [Doc. 7-16]  Slide 43 instructs the Board to "Only call witnesses if necessary. Utilize the Title IX report…", suggesting that Board members should look to the determinations as to relevance made by Ussery before questioning witnesses or assessing credibility *Id.* Slide 47 advises the Board that to "Contact us anytime" with the names, titles and contact information for Honey Ussery, Title IX Coordinator and Lindsey Bartlett Mosvick, Asst. Director for Violence Prevention. Mosvick served as Jane Roe's advisor for the proceeding.

Furthermore, in documents received from preliminary discovery after the filing of the initial Motion for a Preliminary Injunction, it was revealed that the selection of the panel members by Tracy Murry in John Doe's case was presented to Honey Ussery for her approval. *See Exhibit "A".* The Defendants have taken the position that Honey Ussery's report did not credit or discredit witness statements nor reach any conclusion or offer any suggested recommendations as to whether or not the Plaintiff's violated the policy. However, the simple fact is the University's Appellate Consideration Board did in fact find that the presentation of evidence to the panel during the initial Judicial Council hearing was made in such a manner as

to suggest that the Plaintiff was at fault and raised sufficient concerns for the case to be remanded.  Additionally, the statements and information put forth by Ussery were not modified in any way before the information went to the second panel.  In *SUNY - Plattsbugh*, a NYS case on this point, a Title IX Coordinator was the investigator and then guided the panelist in the standards that were to be used.  The appellate court ruled unanimously against Plattsbugh on this point (while dividing on other issues).  *See Matter of Jacobson v. Blaise*, 157 A. D. 3d 1072 (N.Y. App. Div. 3d Dep't January 11, 2018).

The Defendants further argue that the Plaintiff has produced no evidence that any judicial council or appellate consideration board member actually ignored some piece of evidence because of training they received.  However, despite the requirements of the Cleary Act, the University never provided John Doe with the rationale for the decisions made against him and any discussion for the reasons and sanctions that were issued against him.  There was no discussion of inculpatory or exculpatory evidence that was provided.  In the limited amount of discovery that the Plaintiff has been able to engage in on an expedited basis, Plaintiff specifically asked for the University to provide the reasons for the decision and the evidence that was considered.  The University has objected to producing this information and a Motion to Compel is currently outstanding.  [Doc. _____]  At the preliminary injunction stage a party may not prove its claims, but only that it is likely to be able to prove its claims later.  *Kleczek on behalf of Kleczek v. R. I. Interscholastically, Inc.*, 768 F. Supp. 951, 953 (D.R.I. 1991).

While the Defendants rely upon the University's policies, they neglect to address the fact that Ussery was responsible for investigating the allegations raised by individuals and compiling all evidence, including the testimony of the various witnesses, into a report.  *See University of Sexual Misconduct Policy* [Doc. 7-17 at 8].  The Defendants gloss over evidence that was excluded

from consideration by the panel because it never made it to the panel.  They acknowledge the fact that Ussery did not address the polygraph report in favor of John Doe, nor did they include additional photographs.  It is the Defendants argument that there is no authority to suggest Ussery was required to modify her report, and she did not do so.  The crux of the Defendants' position is there is nothing to suggest that Ussery lacked the ability to determining using her own judgment, the relevance of the information that she was going to include in the report or pass on to the decision maker.  Defendants simply state that Ussery was justified in refusing to amend her report to address the materials.  [Doc. 79, p.16]  With respect to the assertions that Ussery refused to consider the forensic medical reports and sexual assault examination of Jane Roe, the Defendants simply argue that it was attached to the report.  The fact is, it wasn't discussed and it wasn't raised by Ussery or deemed relevant by Ussery.

In its Order regarding the Motion to Dismiss this Court has recognized the fact that if there is evidence to show, Ussery told Doe's date not to inform him of the interview with the Title IX Department and to forget about Doe and move on, and informed the student that Jane Roe was a victim and suggested to her that supporting Doe would be considered retaliation when coupled with the student raising concerns about bias to Ussery and getting no response, could suggest an actual bias and when considered in the light most favorable to Doe states a plausible claim that Ussery breached her duty to report all the evidence.  These types of behaviors can constitute a biased investigation and show that Roe was treated more favorably than Doe.

Furthermore, with respect to the due process claims asserted by Doe, "in the procedural due process context, Plaintiff did not alleged gender bias, or indeed any bias on the basis of any otherwise legally protected group or class of individuals.  To the contrary, any type of actual bias is sufficient.  *See Distefano*

It is significant to note that the University of Mississippi provides students with fact sheets about sexual assault. One sheet put forth by the Violence Prevention Office presumptively refers to victims of assault as "female" and informs students that 92% of sexual assault reports by women are true. *See Exhibit "B"*. Another provides a link to an article entitled "The Sexual Victimization of College Women". *See Exhibit "C"*. Regardless of the accuracy or the inaccuracy of the figures presented, the fact that the University has chosen to presumptively characterize victims of sexual assault as female and indicate that it is a myth that a woman would lie about being sexually assaulted shows antecedent gender bias. This bias is further evidenced by Honey Ussery's position regarding false allegations of sexual assault by women. During an interview with Mississippi Public Broadcasting, Ussery was asked about cases wherein false allegations of sexual assault had been made. Ussery stated that the only time she has ever seen a false allegation of sexual assault at the University level was when there was no named respondent. *See [HTTP://www/mpbonline.org/blog/n-legal-terms/2017/11/14/n-legal-terms-sexual-harrassment-and-sexual-assault/: Mississippi](HTTP://www/mpbonline.org/blog/n-legal-terms/2017/11/14/n-legal-terms-sexual-harrassment-and-sexual-assault/) Public Broadcasting, Think Radio; in legal terms: sexual harassment and sexual assault, November 14, 2017, at 49:48-52:26.* Furthermore, in response to a call or inquiry, Ussery did not identify any action that would be taken by the University of Mississippi against the individuals who might be determined to have made false sexual assault claims. *Id.*

While the Defendants would have the Court believe that there is not a substantial likelihood of success on the merits, there are clearly significant issues that have been raised by the Plaintiff with the University's investigation and training as well as certain procedural due process aspects related to the manner in which Doe and other males are treated. At this stage, a preliminary injunction is appropriate. An allegation that the process was one-sided, irregular, and unsupported

by evidence may give rise to an inference of bias." *Collick v. William Paterson Univ.*, 2016 U.S. Dist. LEXIS 160359 (D.N.J. Nov. 17, 2016) There are a multitude of other cases wherein Federal district courts have found there to be a substantial likelihood of success on the merits in cases similar to this.[1]

"There is a fair question whether preponderance of the evidence is the proper standard for disciplinary investigations such as the one that led to Plaintiff's expulsion. The Dear Colleague Letter states that anything greater than preponderance of the evidence is "inconsistent with the standard of proof established for violations of the civil rights laws," largely referring to Title VII. Dear Colleague Letter at 10–11. But Title VII can only be enforced against employers, not individual employees, *see Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1095 n.1 (10th Cir. 2007); and in any event, Title VII liability does not create anything equivalent to the permanent notation that the University has placed on Plaintiff's transcript. Given the significant consequences of such a permanent record, it is at least open to debate whether the Dear Colleague Letter's reasoning is based on a false equivalence, and whether due process requires a stricter standard of proof. *Cf. Goss*, 419 U.S. at 575, 95 S.Ct. 729 ("If sustained and recorded, those charges could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment."); *see also 62 Fed. Re*g. at 12045 ("The rights established under Title IX must be interpreted consistently with any federally

---

[1] There are a multitude of other cases wherein federal courts have issued either a TRO or a preliminary injunction. See e.g. Doe v. Univ. of Cincinnati, 872 F.3d 393 (6th Cir. 2017); Doe v. Univ. of Mich., 2018 U.S. Dist. LEXIS 112438 (D. Mich. July 6, 2018); Roe v. Adams-Gaston, No. 2:17-cv-00945 (S.D. Ohio Apr. 17, 2018); Elmore v. Bellarmine Univ., 2018 U.S. Dist. LEXIS 52564 (W.D. Ky. Mar. 29, 2018); Nokes v. Miami Univ., 2017 U.S. Dist. LEXIS 136880 (S.D. Ohio Aug. 25, 2017); Doe v. Pa. State Univ., 276 F. Supp. 3d 300 (M.D. Pa. August 18, 2017); Doe v. Univ. of Notre Dame, 2017 U.S. Dist. LEXIS 69645 (N.D. Ind. May 8, 2017) (vacated at request of the parties); Doe v. Weill Cornell Med. Coll. of Cornell Univ., No. 1:16-cv-03531 (S.D.N.Y. May 20, 2016); Ritter v. Okla. City Univ, 2016 U.S. Dist. LEXIS 60193 (W.D. Okla. May 6, 2016); Doe v. Brown Univ., 2016 U.S. Dist. LEXIS 191390 (D.R.I. April 25, 2016); Doe v. Pa. St. Univ., No. 4:15-cv-02072 (M.D. Pa. Oct. 28, 2015); Doe v. Middlebury Coll., 2015 U.S. Dist. LEXIS 124540 (D. Vt. Sept. 16, 2015); King v. DePauw Univ., 2014 U.S. Dist. LEXIS 117075 (S.D. Ind. August 22, 2014).

guaranteed rights involved in a complaint proceeding."). *Doe v. DiStefano*, 255 F. Supp. 3d at. 255 F.Supp.3d 1064, at 1082 n.13, 348 Ed. Law Rep. 157 (May 26, 2017)

In DiSTefano, the Plaintiff claimed that he was "presumed guilty from the outset and charged with the task of proving his innocence," much as is the case in the current proceeding.

Respectfully submitted this the 10th day of August, 2018.

>Respectfully submitted,
>
>**JOHN DOE,**
>**PLAINTIFF**
>
>By: */s/ Michelle T. High*
>    Michelle T. High

J. Lawson Hester (MS Bar No. 2394)
lhester@pbhfirm.com
Michelle T. High (MS Bar No. 100663)
mhigh@pbhfirm.com
Pettis, Barfield & Hester, P.A.
4450 Old Canton Road, Suite 210
Jackson, Mississippi 39211
P.O. Box 16089
Jackson, Mississippi 39236-6089
Telephone: 601-987-5300
Facsimile: 601-987-5353

# **CERTIFICATE OF SERVICE**

I, J. Lawson Hester, hereby certify that I have this day filed the foregoing document with the Clerk of Court for the U.S. District Court, Southern District of Mississippi, via hand-delivery, simultaneously with a Motion to Seal and supporting Memorandum of Law.

In addition, a true and correct copy of this pleading is being provided to the following parties simultaneously with service of the Complaint and Summons:

Jim Hood, Attorney General
OFFICE OF THE ATTORNEY GENERAL
Walter Sillers Building
550 High Street, Suite 1200
Jackson, MS 39201
**COUNSEL FOR THE STATE OF MISSISSIPPI, STATE INSTITUTIONS
OF HIGHER LEARNING, and THE UNIVERSITY OF MISSISSIPPI**

Tracy E Murry
2000 Lexington Pt, Apt 12A
Oxford, MS  38655

Honey Ussery
415 Timber Lane
Oxford, MS  38655


SO CERTIFIED, this the 10th day of August, 2018.

                                                By: */s/ Michelle T. High*
                                                    Michelle T. High